632 So.2d 1352 (1994)
ALAMO RENT-A-CAR, INC., Petitioner/Cross-Respondent,
v.
Michael MANCUSI, Respondent/Cross-Petitioner.
No. 80376.
Supreme Court of Florida.
January 6, 1994.
Rehearing Denied March 15, 1994.
*1354 G. Bart Billbrough of Walton, Lantaff, Schroeder & Carson, Miami, for petitioner/cross-respondent.
John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, and Walter G. Campbell of Krupnick, Campbell, Malone and Roselli, Ft. Lauderdale, for respondent/cross-petitioner.
OVERTON, Justice.
We have for review Alamo Rent-A-Car, Inc. v. Mancusi, 599 So.2d 1010 (Fla. 4th DCA 1992), based on direct conflict with Gatto v. Publix Supermarket, Inc., 387 So.2d 377 (Fla. 3d DCA 1980). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we approve in part and quash in part the district court's decision in this malicious prosecution case, and we remand this cause for a new trial.
The record reflects that Michael Mancusi sued Alamo-Rent-A-Car (Alamo) for malicious prosecution based on Mancusi's arrest for failure to return a rental car to Alamo in violation of section 817.52(3), Florida Statutes (1985). At trial, a jury awarded Mancusi $300,000 in compensatory damages and $2,700,000 in punitive damages. On appeal, the Fourth District Court of Appeal summarized the facts of this case as follows:
The facts leading up to Mancusi's arrest on the criminal charges were in dispute; however, it appears that Mancusi rented a vehicle from Alamo believing that his contract entitled him to use the vehicle for one month, while the contract showed that the rental period was for one week only. Eventually Alamo was able to contact Mancusi, who stated his belief that he had rented the vehicle for one month, and asked Alamo to retrieve the vehicle from his business location because it would not start. Alamo had the vehicle towed to its lot, and collected payment for only a portion of the time that Mancusi had used the vehicle. Although the vehicle had been returned, the Fort Lauderdale Police Department continued its investigation into the incident, and approximately two (2) weeks after the vehicle was returned to Alamo, Mancusi was taken to the Fort Lauderdale police department, questioned, and arrested.
The transcript of Mancusi's criminal case, proffered by Alamo during the malicious prosecution trial, reveals that after approximately one-half day of testimony in Mancusi's criminal trial, the state announced a nolle prosequi following lengthy discussions between the state, Alamo, and Mancusi. During these discussions it was determined that the state would announce a nolle prosequi, and Mancusi would pay $364.00 to Alamo and execute a release in favor of the City of Fort Lauderdale, the State Attorney's Office, the State of Florida, and the City of Dania. Alamo also proffered the testimony of Mancusi's criminal attorney, which tended to indicate that the nolle prosequi was announced after a bargain had been struck between the state and Mancusi.
The trial court did not allow Alamo to admit testimony regarding the circumstances surrounding the nolle prosequi because the trial court ruled that the nolle prosequi Mancusi received after jeopardy had attached in his criminal case constituted a bona fide termination of the criminal litigation in Mancusi's favor, as a matter of law.
Mancusi, 599 So.2d at 1011-12. The criminal trial transcript and other testimony regarding the nol pros was proffered into the record by Alamo after the trial judge determined that this evidence was inadmissible given his ruling that, because jeopardy had attached, the nol pros was bona fide as a matter of law. Alamo asserted that the proffered evidence would show that the nol pros was bargained for and therefore not bona fide. The trial judge, however, stated that, because jeopardy had attached, the nol pros constituted a bona fide termination and, consequently, that evidence regarding the nol pros was irrelevant and inadmissible.
The trial court also ruled that section 768.73(1)(a), Florida Statutes (1987), the statute *1355 limiting punitive damages to no more than three times the amount of a compensatory damage award, was inapplicable in this case.
On appeal, the district court reversed the trial court's decision in part and remanded this cause for a new trial. The district court first determined that the trial court erred in holding that the nol pros of the underlying criminal case constituted a bona fide termination under the circumstances of this case. The district court stated that a "bargained-for" nol pros after jeopardy had attached is not indicative of the accused's innocence and is not sufficient, as a matter of law, to establish a bona fide termination. Consequently, the district court ruled, the jury should have been allowed to review the evidence surrounding the nol pros to determine whether the nol pros was, in fact, a bona fide termination. In so ruling, the district court noted that the burden rests on the defendant "to establish that the decision to nolle prosequi was based solely on restitution." Mancusi, 599 So.2d at 1012 (quoting Liu v. Mandina, 396 So.2d 1155, 1156 (Fla. 4th DCA 1981)) (emphasis added). The district court also stated that the jury should have been allowed to review the evidence regarding the nol pros and should have been allowed to hear the proffered testimony regarding the negotiations and conditions from which the nol pros resulted.
Finally, the district court addressed the issue of punitive damages. Under section 768.73(1)(a), punitive damages must be limited to no more than three times the amount of compensatory damages awarded in any civil action based on, among other things, "misconduct in commercial transactions." The district court, in affirming the trial court's ruling on this issue, found that the statute did not apply to cases involving an intentional tort. The district court then concluded that the instant case was based on the intentional tort of malicious prosecution rather than on the negligence action of "misconduct in a commercial transaction" and, as such, that the statutory limitation on punitive damages was not applicable.

Bona Fide Termination
In order to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding. Burns v. GCC Beverages, Inc., 502 So.2d 1217 (Fla. 1986); Adams v. Whitfield, 290 So.2d 49 (Fla. 1974). The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution.
Alamo's principal argument concerns the third element, a bona fide termination. Alamo first asserts that the district court erroneously placed the burden on Alamo rather than Mancusi to prove a bona fide termination of the underlying criminal case on which this action is based. Second, Alamo contends that Mancusi must do more than simply show that the underlying criminal case was dismissed; Mancusi must also prove that the termination was one of "good faith," i.e., that the underlying action was dismissed because Mancusi was innocent. Third, Alamo asserts that the district court erroneously stated that a nol pros is always proof of a bona fide termination unless it is shown that the dismissal was secured "solely for restitution." As to this last assertion, Alamo states that, although a nol pros that is secured on the promise of restitution does not constitute a bona fide termination, neither does a nol pros that is secured through bargaining, negotiation, or a promise of payment, such as the one at issue here. Because Mancusi's nol pros was allegedly premised upon a bargained-for promise of payment to Alamo, Alamo argues that Mancusi has failed to establish the bona fide termination element and concludes that judgment must be entered in its favor.
Mancusi, on the other hand, maintains that the district court did not reverse the burden *1356 of proof or suggest that Alamo had the burden of showing the absence of a bona fide termination. Mancusi insists that the district court merely held that, once he proved that the underlying criminal case was dismissed by the State, the burden then shifted to Alamo to prove that the nol pros was based "solely on restitution." Further, he states that negotiating or discussing a nol pros with the State does not negate the "bona fide" nature of the dismissal for purposes of malicious prosecution. Based on the evidence presented at trial, Mancusi claims that the termination was bona fide as a matter of law and asks that we uphold the judgment entered by the trial court.
The district court, relying on Freedman v. Crabro Motors, Inc., 199 So.2d 745 (Fla. 3d DCA 1967), stated that a bona fide termination is one that indicates the innocence of the accused and is one that has not been obtained by the accused on a bargained-for promise of payment or restitution. Clearly, as with all of the elements of a malicious prosecution claim, it is the plaintiff's burden to establish that the underlying cause of action was terminated and that such termination was "bona fide." Once a plaintiff submits evidence of a bona fide termination, the burden shifts to the defendant to rebut that the termination was bona fide. For example, when a plaintiff establishes that an underlying criminal case was nol prossed and presents evidence that the nol pros was not the result of a negotiated plea or bargain, the burden then shifts to the defendant to present evidence to the contrary and the issue becomes one for a jury to decide.[1] Consequently, we disapprove the district court's opinion and the opinion in Liu to the extent those opinions could be construed to hold that it is initially the defendant's burden to establish that a nol pros was not bona fide and that a nol pros is bona fide unless it is based "solely on restitution."
We note, however, that bargaining or negotiating, in and of itself, does not always negate the bona fide nature of the termination. For instance, as the district court found in Shidlowsky v. National Car Rental Systems, Inc., 344 So.2d 903 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 516 (1978), if the bargaining constitutes nothing more than a promise to pay what was offered before the charges were brought, and the negotiations reflect the accused's innocence, then the termination would still be bona fide.
The question in this case then becomes whether the nol pros was based on a bargained-for promise of payment to Alamo. As noted, Alamo and Mancusi both assert that sufficient facts exist for this Court to rule in their favor as a matter of law as to whether the nol pros constituted a bona fide termination. However, the record reflects that the facts surrounding the issuance of the nol pros are in dispute. As an example, Mancusi contends that the promise of payment was separate and apart from the nol pros because the payment constituted nothing more than what Mancusi had been offering all along. Alamo, on the other hand, contends that payment by Mancusi was the result of a negotiated nol pros. As stated by the district court, only after considering the circumstances surrounding the nol pros could the trier of fact determine whether the nol pros Mancusi received was bona fide. Consequently, we find that, on this record, the district court appropriately held that this issue was a question for the jury as the finder of fact. We agree that the jury should have been allowed to hear the circumstances surrounding the termination and that this case must be remanded for a new trial to allow a jury to consider whether the termination was bona fide.[2]

Probable Cause and Malice
Alamo's next contention is that the trial judge erred in denying Alamo's motions for *1357 directed verdict on the probable cause and malice elements of the malicious prosecution claim. Alamo asserts that sufficient evidence exists within the record to establish probable cause as a matter of law. Moreover, Alamo states that the record supports no finding of actual or legal malice.
As the court stated in Cold v. Clark, 180 So.2d 347, 349 (Fla. 2d DCA 1965):
In an action for malicious prosecution, the question of probable cause is a mixed question of law and fact. When the facts relied on to show probable cause are in dispute, their existence is a question of fact for the determination of the jury; but their legal effect, when found or admitted to be true, is for the court to decide as a question of law.
From our review of the record, the facts of this case are in dispute. Therefore, we find that the trial judge properly denied Alamo's request for a directed verdict on the issue of probable cause.
Likewise, the trial judge properly denied Alamo's request for a directed verdict on the issue of malice. In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others. Adams. In this case, the issue of probable cause is in dispute and Mancusi produced evidence from which a jury could infer that Alamo's employees intentionally provided false information to authorities.

Punitive Damages
Regarding the issue of punitive damages, Alamo raises two issues. First, Alamo contends that the trial court erred in failing to direct a verdict on the issue of punitive damages. Second, even if punitive damages are awardable under the facts of this case, Alamo argues that the trial judge should have limited punitive damages to no more than three times the amount of the compensatory damage award pursuant to section 768.73(1)(a).
As to the directed verdict issue, Alamo states that punitive damages can be awarded only where a defendant's conduct is willful, wanton, malicious, or outrageous and that, because such conduct was not established under the facts of this case, no evidence exists upon which punitive damages could be awarded. Legal malice, if based on a showing of gross misconduct or willful and wanton disregard of a plaintiff's rights, is sufficient to support a punitive damage award. Adams, 290 So.2d at 51. Given our consideration above of legal malice and the disputed facts of this case, we find that a jury could have found sufficient malice to support an award of punitive damages.
To properly address Alamo's second contention, that section 768.73(1)(a) limits the amount of the punitive damages in this case to no more than three times the amount of any compensatory damage award, it is necessary to set forth and examine the provisions of that statute. Section 768.73(1)(a) provides:
In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty that involves willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant shall not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b). However, this subsection does not apply to any class action.
(Emphasis added.) Given the specific wording of this statute, we find that this action was "based on ... misconduct in a commercial transaction ... involv[ing] willful, wanton, or gross misconduct." The misconduct at issue occurred during the course of the commercial transaction between Alamo and Mancusi and was the direct result of that commercial transaction. Moreover, the language specifically reflects the intent to include certain intentional conduct by the inclusion of the words "willful and wanton." Consequently, we disagree with the district court's holding that the statute does not apply to cases involving intentional torts such *1358 as a malicious prosecution arising out of a commercial transaction. Nevertheless, we still must determine whether section 768.73(1)(a) applies to the instant case.
Section 768.73(1)(a) was enacted by the legislature in 1986 and specifically "applies only to causes of action arising on or after July 1, 1986, and does not apply to any cause of action arising before that date." § 768.71(2). When first enacted, however, the statute did not include the "misconduct in commercial transactions" language. That language was not added until the statute was amended in 1987. The amendment became effective October 1, 1987. See ch. 87-42, § 1, Laws of Fla. The instant cause of action arose during September 1986, which was after the application date of section 768.73(1)(a) but before the effective date of the amendment. This action was filed on October 2, 1987, one day after the effective date of the amendment. To determine whether the amendment applies to the instant cause of action, we must examine whether the amendment is one of substantive or procedural law.
A substantive statute is presumed to operate prospectively rather than retrospectively unless the Legislature clearly expresses its intent that the statute is to operate retrospectively. State v. Lavazzoli, 434 So.2d 321 (Fla. 1983); Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); Thayer v. State, 335 So.2d 815 (Fla. 1976). This is especially true when retrospective operation of a law would impair or destroy existing rights. Lavazzoli. Procedural or remedial statutes, on the other hand, are to be applied retrospectively and are to be applied to pending cases. City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); Johnson v. State, 371 So.2d 556 (Fla. 2d DCA 1979).
As we stated in Benyard v. Wainwright, 322 So.2d 473, 475 (Fla. 1975), substantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights. Following this rationale, we find section 768.73(1)(a) to be a substantive rather than procedural statute. Punitive damages are assessed not as compensation to an injured party but as punishment against the wrongdoer. Carraway v. Revell, 116 So.2d 16 (Fla. 1959). Consequently, a plaintiff's right to a claim for punitive damages is subject to the plenary authority of the legislature. Gordon v. State, 608 So.2d 800, 801 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1647, 123 L.Ed.2d 268 (1993). The establishment or elimination of such a claim is clearly a substantive, rather than procedural, decision of the legislature because such a decision does, in fact, grant or eliminate a right or entitlement. Because we find that section 768.73(1)(a) is substantive rather than procedural, we find that the amendment to section 768.73(1)(a) does not apply to the instant cause of action. This is true even though Mancusi's cause of action was filed after the effective date of the amendment. See Young v. Altenhaus, 472 So.2d 1152 (Fla. 1985).
Accordingly, we approve in part and quash in part the district court's decision in this case; we disapprove Liu v. Mandina, 396 So.2d 1155 (Fla. 4th DCA 1981); and we direct that this cause be remanded for further proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part, dissenting in part.
I concur in the majority opinion on all issues except whether there is sufficient evidence available to support a claim for punitive damages. I do not think there is and would remand for a trial on compensatory damages only.
NOTES
[1] The testimony of the plaintiff that the nol pros was not the result of a negotiated plea is sufficient to shift the burden to the defendant.
[2] We note that Mancusi raises an issue in his cross-petition as to the admissibility of the telephone testimony of the state attorney. The admissibility of the state attorney's testimony by telephone is extraneous to the central issues in this case because the trial judge did not refuse admission of just that testimony; he refused admission of all testimony regarding the nol pros, including the criminal case transcript and the testimony of Mancusi's criminal defense attorney regarding the facts surrounding the nol pros.