[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11630
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23806-CMA


SIAVASH ZARGARI,

Plaintiff–Appellant,

versus

UNITED STATES OF AMERICA,
LUIS KING,

Defendants–Appellees,

JEFFREY E. CROAKE,
individually, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 22, 2016)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

This action arises out of the arrest and prosecution of Plaintiff Siavash Zargari ("Plaintiff") in connection with a scheme to fraudulently charge customers' credit cards at Miami Beach nightclubs. A jury acquitted Plaintiff of all charges. He then brought this *pro se* lawsuit for false arrest and malicious prosecution against the United States, FBI Agents Jorge Miyar and Alex Tiguy, and Miami Beach Police Department Officer Luis King. The district court dismissed the United States and FBI Agents for failure to state a claim and lack of subject matter jurisdiction. Later, the court granted summary judgment to Officer King, finding that Plaintiff had failed to show an absence of probable cause for his arrest. Plaintiff appeals those orders. After careful review of the record and the parties' briefs, we affirm.

## I.    Background

In 2010, the FBI received a complaint that a man's credit card had been charged $43,000 at a Miami Beach nightclub for alcohol he did not purchase. Officer King began working undercover at the direction of the FBI posing as a corrupt police officer so he could gain access to the nightclubs under investigation. He first posed as an off-duty police officer working as a doorman and security guard at Stars Lounge. King's investigation revealed that the co-conspirators were

2

hiring women primarily from Latvia and Estonia who in turn would promote their nightclubs and lure male customers from high-end hotels. Patrons were then charged exorbitant prices for alcohol, or they were charged for items they did not even order. According to Agent Tiguy's arrest warrant affidavit, the clubs were not open to the public and served only as a front for the scheme. After the victims were brought to the club, they were encouraged to order bottles of wine and champagne while the women pushed them to get heavily intoxicated. The victims often were not told the price of the alcohol, or they were told no price at all. The managers would make copies of the victims' credit cards and driver's licenses and bill them up to $5,000 for bottles of wine or champagne that cost the club only $5 to $100. The co-conspirators would continue to order alcohol on behalf of the victims without their knowledge and then surreptitiously pour the drinks and bottles out in plants or ice buckets.

When it came time to pay the tab, some of the victims were so heavily intoxicated that they had to be propped up long enough to sign the credit card receipts. If the victim refused to pay his bill, the manager would explain to him that he had agreed to purchase the alcohol, the bar had surveillance video of him ordering the drinks, and the police would be called if he did not pay. Officer King also threatened to arrest patrons.

In October 2010, Oleg Simchuk, the main target of the investigation and owner of Stars Lounge, fled to Russia after becoming suspicious that he was under investigation. The FBI thus shifted their focus to other members of the conspiracy. Co-conspirator Albert Takhalov took over Stars Lounge and continued to perpetrate fraudulent activity. In January 2011, Takhalov decided to open a new club through his business, Ciao Miami Beach LLC. Plaintiff was part owner of K&S Entertainment, Inc. ("K&S"), which operated Tangia Restaurant and Lounge. K&S subleased an area of the restaurant to Ciao Miami Beach, which opened and operated Tangia Club on the restaurant's premises. K&S and Ciao Miami Beach entered into a management agreement so Tangia Club could use K&S's liquor license under K&S's name, but Plaintiff alleges that he was not a principal or employee of the club. Officer King worked security at Tangia Club and continued to observe various fraudulent activities.

On April 5, 2011, Agent Tiguy obtained an arrest warrant for the ringleaders and other co-conspirators of the scam, including Plaintiff. A grand jury later indicted Plaintiff and seventeen others in connection with the fraud ring. Plaintiff was charged with one count of conspiracy to commit wire fraud, eight counts of wire fraud, and one count of conspiracy to commit fraud in connection with immigration documents. Following a jury trial, Plaintiff was acquitted of all charges.

Plaintiff filed this *pro se* lawsuit on October 22, 2013.  In Plaintiff's Second Amended Complaint, he sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), based on the actions of FBI Agents Tiguy and Miyar and Miami Beach Police Officer King (Count 1).  Plaintiff also alleged false arrest and malicious prosecution claims against Agents Tiguy (Count 2) and Miyar (Count 3) under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Finally, Plaintiff sued Officer King for false arrest and malicious prosecution under *Bivens*, 42 U.S.C. § 1983, and Florida state law (Counts 4, 5 and 6).  The gravamen of Plaintiff's claims is that Defendants lied to the magistrate judge and grand jury and fabricated evidence to establish probable cause for Plaintiff's arrest and indictment even though they knew Plaintiff had not committed any crimes.

The district court dismissed the FBI Agents and the United States for failure to state a claim and for lack of subject matter jurisdiction.  The court found that Plaintiff failed to plausibly allege that Agents Tiguy and Miyar violated a clearly established constitutional right.  For that reason, the FTCA claim premised on Tiguy and Miyar's actions also failed.  And because Officer King was not a federal law enforcement officer, the court lacked subject matter jurisdiction over Plaintiff's FTCA claim premised on King's actions.  Later, the court granted summary judgment to King.  The court found that Plaintiff had failed to show an

5

absence of probable cause or that King intentionally or recklessly made false statements to secure an indictment.  Plaintiff appeals.

## II.    Discussion

### A.    False Arrest and Malicious Prosecution Claims against Agents Tiguy and Miyar[1]

We review the grant of qualified immunity on a motion to dismiss *de novo*. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  We accept the facts alleged in the complaint as true and draw all reasonable inferences in Plaintiff's favor.  *Id.*  While we liberally construe *pro se* pleadings, this leniency does not give courts license to serve as de facto counsel or permit them to rewrite an otherwise deficient pleading.  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

Plaintiff levels several accusations against Agents Tiguy and Miyar:  Tiguy signed a probable cause affidavit that contained false statements; Miyar and King

---

[1]  Although the parties discuss both false arrest and malicious prosecution, technically Plaintiff's Fourth Amendment claim is more closely analogous to a claim for malicious prosecution.  *See Uboh v. Reno*, 141 F.3d 1000, 1002–03 (11th Cir. 1998) (explaining that Fourth Amendment violation analogous to common law tort of malicious prosecution is cognizable *Bivens* claim).  This Court has recognized that when a person is arrested pursuant to a warrant—regardless of the validity of that warrant—confinement is imposed pursuant to legal process and thus the proper claim is for malicious prosecution (wrongful detention pursuant to legal process) rather than for false arrest (wrongful detention without process).  *See Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996); *see also Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995).  Because Plaintiff was arrested pursuant to a warrant, we characterize Plaintiff's alleged Fourth Amendment violation as a malicious prosecution claim.  In either case, though, the plaintiff must show a lack of probable cause for his arrest or prosecution.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).  As we explain below, Defendants had probable cause to prosecute Plaintiff, so his Fourth Amendment claim fails when construed either way.

tried to set him up to look like he was bribing a federal agent; the Agents misled the magistrate judge by failing to mention that Simchuk had fled to Russia; and the Agents unnecessarily prolonged the investigation.  The FBI Agents argue that they are entitled to qualified immunity because, even accepting Plaintiff's allegations as true, they did not violate a clearly established constitutional right.

### 1.    *Qualified Immunity and Malicious Prosecution*

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official is entitled to qualified immunity unless a plaintiff can demonstrate both that the officer committed a constitutional violation and that the right at issue was "clearly established" at the time of the alleged misconduct. *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015).

To establish a federal malicious prosecution claim, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).  Under Florida law, the elements a plaintiff must allege include malice and an absence of probable cause to

initiate the proceeding against him.[2] *Id.* Accordingly, the existence of probable cause defeats a malicious prosecution claim. *See Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994).

"[T]he standard for determining whether probable cause exists is the same under Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984) (quotation marks omitted). "[T]he facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as the facts necessary to support a conviction." *State v. Scott*, 641 So.2d 517, 519 (Fla. Dist. Ct. App. 1994). To be entitled to qualified immunity, an officer need only have had "arguable" probable cause. *Kingsland*, 382 F.3d at 1232. Thus, Plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances."

---

2 The common law elements of malicious prosecution are: "(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994).

*Id.* But qualified immunity still applies if the officer reasonably but mistakenly believed that probable cause was present. *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).

In addition, when an "alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012); *cf. Kelly v. Serna*, 87 F.3d 1235, 1241 (11th Cir. 1996) (stating that under Georgia law an "indictment constitutes *prima facie* evidence that probable cause existed for the prosecution"). Even so, a plaintiff may still overcome qualified immunity by showing that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 132 S. Ct. at 1245 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Furthermore, we have held that officers are not entitled to qualified immunity if they "fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause." *Kingsland*, 382 F.3d at 1233.

## 2.    *Analysis*

Plaintiff first challenges the existence of probable cause by alleging that the affidavit Agent Tiguy signed when he obtained an arrest warrant from the magistrate judge contained several false statements. Most of Plaintiff's allegations

are conclusory, but he does specifically point to three subparagraphs in paragraph 22 of the affidavit:

> h) On March 19, 2011, [Plaintiff] contacted [Officer King] about a victim who was disputing his bill at a club and wanted him arrested.
>
> i) On March 26, 2011, [Plaintiff] took a cell phone from a victim at the club and later stated that he had done so in order to use it as evidence against the victim challenging the charges with his credit card company.
>
> j) On February 20, 2011, [Officer King] overheard TAKHALOV and [Plaintiff] at Tangia Club, laughing about how they give customers shots of vodka to get them drunk and girls only get water and commenting that K. TAKHALOV must be careful not to mix it up.

As Agent Tiguy points out, the affidavit stated that Officer King was the one who actually witnessed these events while he was working undercover, not Tiguy. "[B]oth the United States Supreme Court and the Florida Supreme Court have allowed the collective knowledge of the investigating officers to be imputed to each participating officer." *Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012) (citing *United States v. Hensley*, 469 U.S. 221, 232 (1985); *Voorhees v. State*, 699 So.2d 602, 609 (Fla. 1997); and *Dewberry v. State*, 905 So.2d 963, 967 (Fla. Dist. Ct. App. 2005)). Tiguy was therefore entitled to rely on "information supplied by other officers," *Voorhees*, 699 So.2d at 609, in determining whether there was probable cause to arrest Plaintiff. Even if King knew these events did not take place, his lies cannot support an inference that Tiguy had any reason to believe that

10

King was untrustworthy absent plausible factual allegations to that effect. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978) (a probable cause affidavit need not be "'truthful' in the sense that every fact recited in the warrant affidavit is necessary correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily"). Accordingly, Plaintiff's conclusory allegations that Tiguy lied in the affidavit do not establish that Tiguy unreasonably believed probable cause existed.

Next, Plaintiff argues that the Agents tried to frame him for bribery by editing a video to make it look like Plaintiff was present when Takhalov paid Officer King a bribe. In fact, he says, he was in the restroom when the bribe was allegedly paid and entered the room much later, even though the video was shortened to show him in the room immediately after the bribe was paid. But Plaintiff does not allege that this video was used to obtain probable cause for his arrest or indictment. He mentions that the video was shown at trial and states only that Defendants "plausibly showed this clip to [the] magistrate judge to get [a] criminal complaint signed." The probable cause affidavit and indictment do not mention a video. What's more, Plaintiff was not even charged with bribery, unlike Takhalov, yet Plaintiff does not explain how this video would have been used to

support probable cause even if it had been shown to the magistrate judge or grand jury.[3]  These allegations fail to state a claim.

Plaintiff further argues that Agents Tiguy and Miyar misled the magistrate judge by not telling him that Simchuk, the main target of the investigation, had fled to Russia, and that the Agents had unnecessarily prolonged the investigation. Plaintiff fails to explain why either of these allegations proves that the Agents fraudulently manufactured probable cause.  To the extent Simchuk's flight to Russia bore on Plaintiff's culpability, "[t]he government is under no duty to bring exculpatory evidence to the grand jury's attention."  *United States v. Waldon*, 363 F.3d 1103, 1109 (11th Cir. 2004).  And Plaintiff cites no cases holding that stretching out an investigation violates a clearly established constitutional right.

In short, Plaintiff fails to plausibly allege that the probable cause affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Messerschmidt*, 132 S. Ct. at 1245 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  After all, the FBI Agents had

---

[3]  While Plaintiff alleges that Tiguy falsely stated that Plaintiff participated in bribery, the affidavit states merely that Plaintiff was present in the club at the time of the alleged bribe, not that Plaintiff was a party to the transaction.  Therefore, the affidavit does not contain any fraudulent statements about Plaintiff's participation in bribery.

Moreover, Plaintiff argues that Defendants doctored audio transcripts of Officer King's undercover recordings.  It is unclear, however, how the discrepancies in the "edited" and "corrected" transcripts fraudulently established probable cause—and Plaintiff does not even allege that the magistrate judge ever saw these transcripts when he signed the arrest warrant or that the transcripts were presented to the grand jury.

reasonably credible reports from Officer King that Plaintiff was present at Tangia Club and participated in its operations by pressuring customers to pay their bills. Plaintiff further alleges that he was a part owner and an officer of K&S, which let Takhalov manage part of its restaurant so Takhalov could open Tangia Club using K&S's liquor license. On these facts, we cannot conclude that no reasonable officer would have believed that a warrant should issue. *See id.* And Plaintiff's allegations do not support an inference that the FBI Agents were motivated by malice, either. *See Alamo Rent-A-Car*, 632 So.2d at 1355. Consequently, Plaintiff's malicious prosecution claims against Agents Tiguy and Miyar fail.

B.    FTCA Claims Based on Tiguy, Miyar, and King's Actions

Plaintiff sues the United States under the FTCA, 28 U.S.C. § 1346(b), for the actions of Agents Tiguy and Miyar described above and for those of Officer King. Because Plaintiff fails to state a claim against Tiguy and Miyar, the allegations against them cannot support the Government's liability under the FTCA, either. As for Officer King, the United States argues that his actions cannot be a basis for federal liability because he was not a federal law enforcement officer and, as such, the court lacks subject matter jurisdiction over this claim.[4]

---

[4] We review *de novo* a district court's order dismissing a claim for lack of subject matter jurisdiction. *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997).

The United States has waived sovereign immunity for claims of malicious prosecution only when the acts are committed by "investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).  The FTCA defines a federal law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*  Plaintiff argues that Officer King was acting as a law enforcement officer of the United States because he was working undercover in an FBI investigation.  Be that as it may, Defendants submitted affidavits[5] from both the Administrative Officer and Assistant Special Agent in Charge of the FBI's Miami Division making clear that Officer King was never an employee of the FBI and was never deputized to an FBI task force.  This means that King was never authorized to exercise statutory federal law enforcement powers, such as carrying firearms, executing search and arrest warrants, and seizing property, *see* 21 U.S.C. § 878(a), as required under the FTCA, 28 U.S.C. § 2680(h).  Because King was not a federal law enforcement officer, this Court lacks subject matter jurisdiction over Plaintiff's suit against the United States based on King's actions.  The district court properly dismissed the FTCA claim.

---

[5]  When a defendant makes a factual attack on subject matter jurisdiction, a court may consider extrinsic evidence and satisfy itself that it has power to hear the case as long as the issues do not implicate an element of the cause of action. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

14

C.    Malicious Prosecution Claims against Officer King

Finally, we address the district court's grant of summary judgment to Officer King on Plaintiff's malicious prosecution claims under *Bivens*, § 1983, and Florida state law. We review *de novo* a grant of summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As explained above, King was not a federal law enforcement officer, so § 1983, not *Bivens*, is the appropriate vehicle to bring suit against a state officer for violation of a federal constitutional right. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995). In any event, "courts generally apply § 1983 law to *Bivens* cases," *id.*, so our analysis is the same. And, because a Fourth Amendment malicious prosecution claim looks to the common law elements of malicious prosecution, *Kingsland*, 382 F.3d at 1234, our analysis of these elements applies to both the § 1983 and Florida state-law claims.

Again, two of the necessary elements of a malicious prosecution claim include malice and an absence of probable cause. *See Alamo Rent-A-Car*, 632 So.2d at 1355. Plaintiff argues that the district court erred in granting summary judgment to Officer King because Plaintiff showed an absence of probable cause,

15

King was liable for not stopping the investigation, and the allegations in the probable cause affidavit were false. Plaintiff's arguments fail because the undisputed evidence demonstrates that there was probable cause for his prosecution. There was evidence that Plaintiff owned half of K&S Entertainment, which entered into a management agreement with Ciao Miami Beach to operate Tangia Club and use K&S's liquor license. What's more, Plaintiff acknowledged that K&S received 40% of the profits from Tangia Club's alcohol sales while splitting expenses with Ciao Miami Beach. Although he denies participating in the fraud or the operations of the club, he acknowledges being present at the club and was recorded by Officer King interacting with patrons and co-conspirators. Given the totality of the circumstances, there was probable cause to believe Plaintiff was involved in the conspiracy.

Plaintiff insists that King knew he was not a participant in the fraud and helped fabricate evidence against him. But unsupported and conclusory assertions cannot defeat a motion for summary judgment. *See Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). Plaintiff further argues that a couple of co-conspirators told King that Plaintiff did not "know about the concept of their business." Once again, however, an officer assesses probable cause based on the totality of the circumstances and in reliance on "reasonably trustworthy information." *Kingsland*, 382 F.3d at 1226 (quoting *Rankin*, 133 F.3d at 1435). It

16

was not unreasonable for Officer King to disregard the statements of co-conspirators when the totality of the circumstances suggested that Plaintiff was a participant in the business, profited from it, and therefore likely was aware of the scheme.

Plaintiff also argues that King is liable for not stopping the investigation and letting fraudulent activity take place at Plaintiff's club so King could tie him to the conspiracy. Plaintiff's allegation that King essentially wanted to frame Plaintiff is not supported by any facts in the record. Again, Plaintiff cites no authority holding that prolonging an investigation and continuing to observe illegal activity violates clearly established law.

Last, Plaintiff contends that King is responsible for the false allegations in Agent Tiguy's probable cause affidavit. Yet there is no evidence that King intentionally lied to the FBI Agents to secure an arrest and indictment. Plaintiff denies that he contacted King about a customer he wanted arrested for disputing a bill, as the affidavit alleges. There was an incident, however, that King recorded where King, Plaintiff, and a co-conspirator confronted a patron who was contesting a charge for a bottle of wine. One co-conspirator told King to "please take him away." King ordered the patron to put his hands behind his back if he was not going to pay the bill. When the patron protested and asked "what did I do wrong," Plaintiff retorted, "Why you lying?" King continued to press the patron until he

agreed to pay for the bottle of wine.  Even if Plaintiff did not tell King to arrest the patron, the undisputed evidence places Plaintiff in the middle of a fraudulent transaction where a patron was coerced into paying for a bottle of wine he did not order.

Plaintiff next denies that he took a cell phone from a victim to use as evidence if the victim disputed his credit card charges.  Officer King testified that he was told by the female co-conspirators that surveillance video from the club showed Plaintiff taking a cell phone from a patron.  Plaintiff argues that he told King he found the cell phone the day after the phone apparently went missing, and he wanted to punish the women who apparently stole the patron's phone.  King thus had evidence that Plaintiff took a phone (though King heard conflicting reasons why Plaintiff took it), so the assertion in the affidavit was not completely baseless such that a jury could infer malice.  *See Alamo Rent-A-Car*, 632 So.2d at 1357 (under Florida law, malice "may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others").[6]  More to the point, if we disregard the cell phone allegations, there was still probable cause for Plaintiff's prosecution.

---

[6] The final disputed statement in the affidavit is that King overheard Takhalov and Plaintiff laughing about how the customers got shots of vodka while the female co-conspirators got water. Plaintiff acknowledged that Tangia Club gave complimentary shots to customers, which he says is common in the bar industry, and that the bartenders usually drank watered-down shots with the customers.  So the substance of the statement was not misleading, nor does it show malice or a lack of probable cause.

In sum, even though Plaintiff offers numerous explanations and arguments for his innocence, on this record we find there was probable cause to believe Plaintiff was part of the conspiracy when there was evidence Plaintiff participated in the operations of the club and shared in the club's profits, and a magistrate judge and grand jury found probable cause to arrest and indict him.[7] *Cf. Messerschmidt*, 132 S. Ct. at 1245.  Plaintiff also fails to point to any evidence of Officer King's malice.  For these reasons, the district court properly granted summary judgment to Officer King.

## III.    Conclusion

For all the above reasons, we affirm the district court's orders dismissing the claims against the United States and the FBI Agents and granting summary judgment to Officer King.

**AFFIRMED.**

---

[7] Plaintiff asserts that Officer King received a 7% contingency fee from the forfeiture proceeds related to this investigation in violation of his due process rights.  Plaintiff's self-created transcript in his brief of one of King's undercover recordings does not support such an inference. According to Plaintiff, King told an FBI Agent, "[Y]ou defiantly [sic] don't want to do that, Daryl ([K]ing's captain) cut me 7%[.]  If we buy all their sh-t, if we go down their time we buy all their sh-t, we link together that way."  We cannot decipher these statements, so we cannot infer that Officer King received a contingency fee.