2003 OK CIV APP 3

**Sharon CARSWELL, Plaintiff/Appellant,**

v.

**OKLAHOMA STATE UNIVERSITY, The Department of Higher Education, State of Oklahoma, Defendant/Appellee.**

No. 96304.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 27, 2002.

Certiorari Denied Dec. 18, 2003.

Sam L. Stein, Cherokee, OK, George Whittenburg, C. Jared Knight, Amarillo, TX, for Appellant.

Angela K. Berglan, Assistant Attorney General, Oklahoma City, OK, for Appellee.

Opinion by LARRY JOPLIN, Vice–Chief Judge:

¶1 Plaintiff/Appellant Sharon Carswell (Plaintiff or Carswell) seeks review of the trial court's order denying her motion to reconsider upon remittitur of a jury verdict assessing damages against Defendant/Appellee Oklahoma State University, the Department of Higher Education, State of Oklahoma (Defendant or OSU) on Plaintiff's negligence claim. In this proceeding, Plaintiff asserts the trial court erred in denying her motion to reconsider because (1) Defendant reaped no protection from the Oklahoma Governmental Tort Claims Act (OGTCA or Act), 51 O.S. § 151, et seq., for its negligence in performance of a proprietary function; (2) if the Act applies, Defendant waived protection of the Act's limitation on damages, 51 O.S. § 154, by failing to assert § 154's damage limit in answer or prior to the verdict; (3) alternatively, the Legislature, by amendment pendente lite, increased § 154's maximum recoverable damages from $100,000.00 to $175,000.00, to which increased recovery she is entitled; and (4) inasmuch as the evidence demonstrated multiple negligent acts of Defendant, she is entitled to recover the statutory maximum damages for each of Defendant's negligent acts. Upon consideration of the record and briefs, however, we find no error by the trial court, and hold the order of the trial court should be affirmed.

¶2 During the school term of 1997–1998, Plaintiff, then a student in her senior year at OSU, worked in an OSU chemistry lab performing research under the supervision of an OSU professor. Plaintiff asserted that in the course of her research lab work, she received substandard supervision and was negligently exposed to various deleterious substances on at least 150 occasions, causing her serious harm and damage.

¶3 Upon consideration of the evidence, the jury returned a verdict for Plaintiff and awarded damages of $1.399 million, reduced by her adjudicated eighteen percent (18%) comparative negligence to $1,140,185.00. By post-judgment oral motion, Defendant prayed for a remittitur of all damages in excess of $100,000.00 pursuant to the terms of § 154 at the time Plaintiff's cause of action accrued, which the trial court granted.

¶4 Plaintiff filed a motion to reconsider, alleging Defendant's waiver of the § 154 damage cap, or alternatively, her entitlement to the statutory maximum damages for each of the alleged 150 negligent exposures she suffered. The trial court denied the motion to reconsider, and Plaintiff appeals.

¶5 In particular, Plaintiff asserts the Act does not protect governmental units from liability for the torts of its agents or employees when committed during the performance of proprietary functions, and the evidence showed OSU was engaged in purely proprietary—not governmental—research at the time of her injury. See, 70 O.S. § 3206.3(1)(d), (2)(c) [1]; 74 O.S. § 85.20(C).[2] See also, e.g., Wallace v. State ex rel. Oklahoma Tourism and Recreation Dept., 1983 OK 114, ¶6, 675 P.2d 436, 437; Hershel v. University Hospital Foundation, 1980 OK 60, ¶0, 610 P.2d 237, 238; State ex rel. State Insurance Fund v. Bone, 1959 OK 135, ¶0(1), 344 P.2d 562, 563. However, the Act

---

1. These sections authorize the Oklahoma State Regents for Higher Education to establish policies and procedures governing the extent to which professors and other faculty and students may acquire property interests in technology developed and revenues derived from sponsored research, and to develop a system of accounting for research-related expenses, revenues and royalties.

2. This section nominates the Department of Central Services as the "exclusive agency to negotiate and contract for the retention of patents and copyrights on material and property developed through state contracts subject to the Central Purchasing Act," and directs deposit of proceeds from the sale of such patents and copyrights in the general revenue fund.

statutorily abrogated the governmental-proprietary test for liability of the state and its subdivisions. *McGaha v. Bd. of Regents of the Univ. of Oklahoma,* 1984 OK 81, ¶ 4, 691 P.2d 895, 896 [3]; *Vanderpool v. State,* 1983 OK 82, ¶ 18, 672 P.2d 1153, 1156.[4] *See also, Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 26, 976 P.2d 1056, 1066. We therefore reject this proposition.

■ ¶ 6 Plaintiff also asserts the § 154 damage cap constitutes an affirmative defense which Defendant waived by failing to assert the defense, either in answer before trial, or until after the verdict.[5] *See, Bentley v. Cleveland County Board of County Commissioners,* 41 F.3d 600, 605 (10th Cir.(Okla.) 1994).[6] We go no farther than to observe that the Pre–Trial Order, in the section, "Defenses," lists "Liability limited to $100,000.00" pursuant to "Okla. Stat. Tit. 51 §§ 151 et seq." We therefore reject this proposition.

3. "[B]ecause of the adoption of the [Act], the governmental-proprietary function [is] no longer . . . determinative in assessing tort liability for all levels of state government."

4. Upon passage of the Act, "[w]e hold that the governmental-proprietary-function inquiry shall no longer be determinative in assessing liability for tort as to all levels of government in this State."

5. Particularly, Plaintiff complains that Defendant filed no answer to her petition; that Defendant did not assert the damage-cap defense during discovery, or until, on oral motion, after the jury returned its verdict.

6. "[A]ssuming the [Act] applied to this action, counsel for the [defendant] County waived any limit on its liability afforded by that statute by failing to raise the issue in its answer, the Pre–Trial Order, or at trial."

7. "The total liability of the state and its political subdivisions *on claims within the scope of this* act, Section 151 et seq. of this title, *arising out of an accident or occurrence* happening after the effective date of this act, Section 151 et seq. of this title, shall not exceed: . . . One Hundred Thousand Dollars ($100,000.00) to any claimant for his claim for *any other loss arising out of a single act, accident, or occurrence.....*" (Emphasis added.)

8. "The total liability of the state and its political subdivisions on claims within the scope of this act, Section 151 et seq. of this title, arising out of

■ ¶ 7 Plaintiff further asserts the uncontroverted evidence showed her exposure to toxic chemicals on at least 150 separate occasions, and that accordingly under the Act, she is entitled to recover the statutory maximum damages for each "occurrence." 51 O.S. Supp.1994 § 154(A)(2).[7] Now see, 51 O.S. Supp.2000 § 154(A)(2) (emerg. eff. June 6, 2000).[8] However, we read *Truelock v. City of Del City,* 1998 OK 64, 967 P.2d 1183, to suggest that where a claimant under the Act suffers a series of losses over a period of time as the result of some continuing wrong, the recovery for *all* "occurrences" may not exceed the maximum allowed by § 154. 1998 OK 64, ¶¶ 1, 14, 967 P.2d at 1185, 1187.[9] Such a reading is consistent with the plain language of § 154, which, in our view, evinces the Legislature's intent to set an absolute and definite upper limit of recovery from the state or its subdivisions. *See, Truelock,* 1998 OK 64, ¶ 27, 967 P.2d at 1190.[10] Moreover, in the present case, it

an accident or occurrence happening after the effective date of this act, Section 151 et seq. of this title, shall not exceed: . . . One Hundred Twenty-five Thousand Dollars ($125,000.00) to any claimant for his claim for any other loss arising out of a single act, accident, or occurrence. The limit of liability for the state or any city or county with a population of three hundred thousand (300,000) or more according to the latest federal Decennial Census shall not exceed One Hundred Seventy-five Thousand Dollars ($175.000.00)....."

9. Over two and one-half month period, claimant filed 16 separate notices of tort claim with city for damages to his house by flooding and discharge of raw sewage from sanitary sewer lines allegedly attributable to city's "improper maintenance of utility ease[ment]"; held, that part of the claim for "inconvenience, annoyance, and discomfort under § 154 of the [Act] is governed by the $100,000.00 limitation for 'other loss' rather than by the $25,000.00 limitation for 'loss of property,' " and, plaintiffs waived "any right to claim a multiple of the § 154 damage limitation [for each of the 16 separate claims] when they failed to except to the trial court's jury instruction" limiting recovery for damage to their property to $25,000.00.

10. Upon appellant's failure to preserve the issue by objection to the relevant jury instruction, "[w]e hold . . . that the $25,000.00 verdict the [plaintiffs] received for property damage carried with it no right to attorneys' fees because $25,000.00 was the maximum allowed by law."

appears Plaintiff presented no evidence demonstrating either separate injuries from each exposure or attributing cause of her damages to anything other than the cumulative effect of her multiple exposures. We therefore reject this proposition.

¶ 8 Plaintiff lastly asserts she is entitled to recover the statutory maximum damages of $175,000.00 pursuant to the version of § 154(A)(2) in effect at the time of trial and submission to the jury, rather than the $100,000.00 maximum under § 154(A)(2) as it existed at the time her cause of action accrued.[11] Here, Plaintiff argues that because § 154(A)(2) is remedial in nature, the pendente lite amendment of that section should be accorded retroactive effect. *See, e.g., Welch v. Armer,* 1989 OK 117, ¶ 27, 776 P.2d 847, 850.[12] However, because the amendment to § 154(A)(2) enlarges a claimant's potential recovery under the Act, and because we discern no expressed Legislative intent to give the amendment retroactive effect, we hold amended § 154(A)(2) effects a substantive change in the law, operates prospectively only and does not inure to Plaintiff's benefit. *Id.*

¶ 9 The order of the trial court denying Plaintiff's motion to reconsider is consequently AFFIRMED.

JONES, J., and BUETTNER, J., concur.

---

11. See, footnotes 7 and 8, supra.

12. "The general rule in Oklahoma is that statutes, and amendments, are to be construed to operate only prospectively unless the Legislature clearly expresses a contrary intent. However, ..., remedial or procedural statutes which do not create, enlarge, diminish, or destroy vested rights are generally held to operate retrospectively."