803 S.E.2d 582

**Helio MARTINEZ, Petitioner**

**v.**

**ASPLUNDH TREE EXPERT CO., Respondent**

No. 17-0039

Supreme Court of Appeals of West Virginia.

Submitted: May 16, 2017

Filed: June 16, 2017

Allan N. Karlin, Esq, Jane E. Peak, Esq., Benjamin J. Hogan, Esq., Allan N. Karlin & Associates, Morgantown, West Virginia, Counsel for Petitioner

Joseph U. Leonoro, Esq., Steptoe & Johnson PLLC, Charleston, West Virginia, Michael J. Moore, Esq., Steptoe & Johnson PLLC, Bridgeport, West Virginia, Counsel for Respondent

WALKER, Justice:

This case is before us on two certified questions from the United States District Court for the Northern District of West Virginia. We consider whether two recently enacted statutes relating to damages—West Virginia Code §§ 55-7-29 and 55-7E-3—apply in a trial conducted after the effective date of the statutes when the underlying facts in the case occurred prior to that effective date. Finding the two statutes at issue to be remedial, we answer the certified questions in the affirmative.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Helio Martinez was employed by Respondent Asplundh Tree Expert Co. ("Asplundh") to perform tree cutting services from 2011 until he was discharged on September 13, 2013. Mr. Martinez is an American citizen originally from Puerto Rico. He worked on a four-person work crew first assigned to work in Pennsylvania but then transferred to work in West Virginia by Asplundh. Mr. Martinez's work crew was comprised entirely of Hispanic individuals and, according to Mr. Martinez, they were treated less favorably than other work crews as they were provided inferior equipment. Moreover, he alleges that at least one member of Asplundh management referred to them as the "Mexican crew" even though none of the crew members were of Mexican descent.

On September 13, 2013, Asplundh summarily terminated Mr. Martinez's employment on the grounds of theft. Although Mr. Martinez denied any wrongdoing, he was not provided any opportunity to respond to the accusation of wrongdoing. The separation notice documenting the termination was prepared by Mr. Martinez's direct supervisor, Terry McFarlan, and states: "Took our truck to shop, was caught stealing from a Jaflo truck on camera." Mr. Martinez's entire work crew was terminated as a result of the alleged theft of a cell phone charger from the truck of a competitor (Jaflo) parked at a truck repair facility (United Auto).

Mr. McFarlan and his supervisor, Tim Blankenship, admitted in their depositions that that the video surveillance upon which the decision to fire Mr. Martinez was based did not show him stealing the cell phone charger. Rather, Asplundh now claims that the video surveillance revealed Mr. Martinez was in a position to observe two other crew members steal the cell phone charger. Although counsel for Mr. Martinez requested a copy of the video surveillance within days of the discharge, it disappeared without explanation. Mr. McFarlan suggested in his deposition that the video "erased itself."

Following his discharge, Mr. Martinez filed a complaint against Asplundh with the West Virginia Human Rights Commission ("Commission"). The Commission subsequently issued a Notice of Right to Sue on December 30, 2014. On January 25, 2015, Mr. Martinez filed a civil action against Asplundh in the Circuit Court of Harrison County alleging that he was wrongfully discharged from employment in violation of the West Virginia Human Rights Act, §§ 5-11-1 through -20 (2013) (the "Human Rights Act"). Mr. Martinez claims that he was unlawfully discriminated against on the basis of race, national origin and/or ancestry.

On February 25, 2015, Asplundh removed the case to the United States District Court for the Northern District of West Virginia on the basis of diversity pursuant to 28 U.S.C. § 1332 (2012). Prior to trial, the parties jointly moved the district court to stay the case and certify the questions we now consider.

By order entered on January 1, 2017, the district court certified the following questions to this Court:

1. Does W.Va. Code § 55-7E-3, which abrogates *Mason County Bd. of Educ. v. State Superintendent of Sch.*, 170 W.Va. 632, 295 S.E.2d 719 (1982), apply to a wrongful discharge case under the West Virginia Human Rights Act, W.Va. Code § 5-11-9(1), where the plaintiff employee was discharged on September 3, 2013, the effective date of the statute is June 8, 2015, and this case is set for trial after June 8, 2015?

2. Does W.Va. Code § 55-7-29, which limits punitive damage awards, apply to a wrongful discharge case under the West Virginia Human Rights Act, W.Va. Code § 5-11-9(1), where the plaintiff employee was discharged on September 3, 2013, the effective date of the statute is June 8, 2015, and this case is set for trial after June 8, 2015?

We proceed to consider the issues raised by the certified questions.

## II. STANDARD OF REVIEW

■ As we have established, "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998). We consider the certified questions presented by the district court according to this standard.

## III. DISCUSSION

To begin, we summarize the arguments advanced by the parties, which are virtually the same for both certified questions. Petitioner argues that responding to the certified questions in the affirmative would impose an impermissible retroactive application of West Virginia Code §§ 55-7-29 and 55-7E-3. Asserting that the law of damages is substantive, Petitioner contends that application of the statutes at issue would impair substantive rights contrary to this Court's prior holding that "[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute ... unless the statute provides explicitly for retroactive application." Syl. Pt. 2, *Public Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996). To hold otherwise, Petitioner states, would be contrary to our observation that "[i]t has been stated repeatedly that new legislation should not generally be construed to interfere with existing contracts, rights of actions, *suits*, or vested property rights." *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 351 n.10, 452 S.E.2d 436, 442 n.10 (1994) (citing *Landgraf v. USI Film Prod.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Petitioner further argues that the statutes at issue are neither procedural nor remedial, and absent contrary language in the legislation, may not be applied retroactively to a case based on a discharge from employment that preceded the statute's effective date of June 8, 2015.

Conversely, Respondent asserts that a plaintiff does not have a right to damages until they are proven at trial and thus Mr. Martinez had no vested right to unmitigated front pay or punitive damages prior to trial. Respondent relies upon the language of each statute referring to an "award" for its argument that applicability is not triggered until damages are awarded. Consequently, Respondent posits that it is not seeking to apply the subject statutes retroactively. Respondent urges this Court to rely upon our prior holding that "[a] law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application." Syl. Pt. 3, *Sizemore v. State Workmen's Compensation Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975). Respondent requests that "the law in effect on the date of trial be applied in this case" and

urges this Court to disregard what it characterizes as a "cloud of confusion" created by Petitioner's retroactivity argument.

We now address each certified question in turn.

### A. West Virginia Code § 55-7E-3

The first certified question is based upon West Virginia Code § 55-7E-3, which addresses the recovery of front pay [1] and back pay [2] in employment cases and states:

.(a) In any employment law cause of action against a current or former employer, regardless of whether the cause of action arises from a statutory right created by the Legislature or a cause of action arising under the common law of West Virginia, the plaintiff has an affirmative duty to mitigate past and future lost wages, regardless of whether the plaintiff can prove the defendant employer acted with malice or malicious intent, or in willful disregard of the plaintiff's rights. The malice exception to the duty to mitigate damages is abolished. Unmitigated or flat back pay and front pay awards are not an available remedy. Any award of back pay or front pay by a commission, court or jury shall be reduced by the amount of interim earnings or the amount earnable with reasonable diligence by the plaintiff. It is the defendant's burden to prove the lack of reasonable diligence.

(b) In any employment law claim or cause of action, the trial court shall make a preliminary ruling on the appropriateness of the remedy of reinstatement versus front pay if such remedies are sought by the plaintiff. If front pay is determined to be the appropriate remedy, the amount of front pay, if any, to be awarded shall be an issue for the trial judge to decide.

W.Va. Code § 55-7E-3 (2016). The effective date of this statute was June 8, 2015.[3]

This new article of Chapter 55 also includes articulated findings and a declaration of purpose. According to West Virginia Code § 55-7E-2(a)(3), "the goal of compensation remedies in employment law cases is to make the victim of unlawful workplace actions whole. . . .". W.Va. Code § 55-7E-2(a)(3). Moreover, "[i]n West Virginia, the amount of damages recently awarded in statutory and common law employment cases have been inconsistent with established federal law and the law of surrounding states. This lack of uniformity in the law puts our state and its businesses at a competitive disadvantage." W.Va. Code § 55-7E-2(a)(4). Finally, "[t]he purpose of this article is to provide a framework for adequate and reasonable compensation to those persons who have been subjected to an unlawful employment action, but to ensure that compensation does not far exceed the goal of making a wronged employee whole." W.Va. Code § 55-7E-2(b).

To answer the certified question presented by the district court, we first examine our precedent relating to the applicability of statutory enactments. We begin with the statutory proposition that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." W.Va. Code § 2-2-10(bb) (2013). "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect. Syl. pt. 4, *Taylor v. State Compensation Comm'r*, 140 W.Va. 572, 86 S.E.2d 114 (1955)." Syl. Pt. 2, *In re Petition for Attorney Fees and Costs: Cassella v. Mylan Pharm., Inc.*, 234 W.Va. 485, 766 S.E.2d 432 (2014).

How statutory amendments apply may be determined by the subject matter of the statute. For example, "[s]tatutory changes that are purely procedural in nature

---

1. "Back pay" is defined as "the wages that an employee would have earned, had the employee not suffered from an adverse employment action, from the time of the adverse employment action through the time of trial." W.Va. Code § 55-7E-1(a).

2. "Front pay" is defined as "the wages that an employee would have earned, had the employee not suffered from an adverse employment action, from the time of trial through a future date." W.Va. Code § 55-7E-1(b).

3. 2015 W.Va. Act ch. 5.

will be applied retroactively." Syl. Pt. 4, *Miller v. Smith*, 229 W.Va. 478, 729 S.E.2d 800 (2012). On the other hand, we have held that "[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application." *Public Citizen* at Syl. Pt. 2.

■ Addressing whether a statute applies retrospectively, we have held, "[t]he law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application. Syl. pt. 3, *Sizemore v. State Workmen's Comp. Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975)." *Cassella* at Syl. Pt. 3.

Turning to the first certified question, we note that the Legislature's findings and declaration of purpose set forth explicitly in West Virginia Code § 55-7E-2 state that "the amount of damages recently awarded in statutory and common law employment cases have been inconsistent with established federal law and the law of surrounding states." *Id.* This inconsistency originated with this Court's holding more than 30 years ago regarding an employee's duty to mitigate damages:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

Syl. Pt. 2, *Mason County Board of Educ. v. State Superintendent of Sch.*, 170 W.Va. 632,

295 S.E.2d 719 (1982). Eventually, this Court extended this so-called "malice exception" beyond a plaintiff's duty to mitigate back pay damages and applied the exception to front pay damages. *See Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 115, 736 S.E.2d 338, 348 (2012); *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 184, 680 S.E.2d 791, 815 (2009); *West Virginia Am. Water Co. v. Nagy*, No. 10-1229, 2011 WL 8583425 at *3 (W.Va. June 15, 2011) (memorandum decision). As a result, this State adopted a concept of unmitigated front and back pay unrecognized by any other state.[4]

West Virginia Code § 55-7E-3 abrogates *Mason County* and its progeny, providing that "in any employment law cause of action," "[u]nmitigated or flat back pay and front pay awards are not an available remedy. Any amount of back pay or front pay by a commission, court or jury shall be reduced by the amount of interim earning or the amount earnable with reasonable diligence by the plaintiff." W.Va. Code § 55-7E-3(a)-(b). Moreover, the statute provides that "[t]he amount of front pay, if any, to be awarded shall be an issue for the trial judge to decide." W.Va. Code § 55-7E-3(b).

We now consider whether this statute applies to an employment case that is based upon a claim for unlawful discriminatory discharge that occurred prior to June 8, 2015, and is set for trial after the effective date of West Virginia Code § 55-7E-3. As we have stated, "[s]tatutes which do not create new rights or take away vested ones are deemed to be remedial and are not within the strict application of the rule of presumption against retroactivity." *Mildred L.M.*, 192 W.Va. at 351 n.10, 452 S.E.2d at 445 n.10 (citing *Joy v. Chessie Emp. Fed. Credit Union*, 186 W.Va. 118, 411 S.E.2d 261 (1991)). Generally, a remedial statute has been defined as "a statute that relates to practice, procedure, remedies and does not affect substantive or vested rights." 73 Am. Jur. 2d *Statutes* § 7 (2017). Accordingly, we consider whether the statute at issue is remedial.

**4.** Amber Marie Moore, Student Work, *Can Damages Be Too Damaging? Examining Mason Coun-* *ty and its Progeny*, 155 W. Va. L. Rev. 807, 837 (2012).

A remedial statute improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs, as opposed to an enactment extinguishing a cause of action or barring a party from prosecuting a cause of action that affects substantive rights and, therefore, is not remedial. 73 Am. Jur. 2d *Statutes* § 7; *see also Langston v. Riffe*, 359 Md. 396, 754 A.2d 389, 395-96 (2000). West Virginia Code § 55-7E-1 addresses the procedure by which an award of back pay or front pay is considered at trial by eliminating the former "malice exception" to a plaintiff's duty to mitigate wage damages. As the Iowa Supreme Court observed, "[i]t has been held that a plaintiff has no vested right in a particular measure of damages." *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assoc.*, 473 N.W.2d 612, 619 (Iowa 1991) (citations omitted). Several other courts have agreed with this approach. *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736 (8ᵗʰ Cir. 1985) (applying statute removing punitive damages as remedy to case filed prior to statute's enactment); *Dardeen v. Heartland Manor, Inc.*, 186 Ill.2d 291, 238 Ill.Dec. 30, 710 N.E.2d 827, 831-32 (1999) ("Because no vested right is affected, the application of the [amended statute abolishing treble damages] to plaintiff's pending suit is proper, irrespective of when the cause of action accrued or the complaint was filed."); *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488, 504 (1989) ("There is no vested right to exemplary damages and the legislature may, at its will, restrict or deny the allowance of such damages") (citation omitted); *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 660 (Mo. 1986) ("[U]nder Missouri law, punitive damages are remedial and a plaintiff has no vested right to such damages prior to the entry of judgment."). Although these cases specifically address punitive damages, which is the subject of the second certified question, we find this analysis equally applicable to front and back pay damages.

■ We find that West Virginia Code § 55-7E-3 is a remedial statute that does not impact a vested right. Because it neither diminishes substantive rights nor augments substantive liabilities, it is not subject to a retroactivity analysis under syllabus point 2 of *Public Citizen.* We note that retroactivity ought to be judged with regard to the act or event that the statute is meant to regulate.[5] On that point, West Virginia Code § 55-7E-3 clearly regulates the award of back pay and front pay at trial in an employment case. As we have stated, "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. . . ." *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W. Va. 341, 351, 752 S.E.2d 372, 382 (2013) (quoting *Landgraf*, 511 U.S. at 273-74, 114 S.Ct. 1483). It is recognized that "[i]n general, statutes dealing with a remedy apply to actions tried after their passage even though the right or cause of action arose prior thereto." 3 Sutherland Statutory Construction § 60:1 (7ᵗʰ ed. 2016). We therefore hold that West Virginia Code § 55-7E-3, abrogating Syllabus Point 2 of *Mason County Board of Education v. State Superintendent of Sch.*, 170 W.Va. 632, 295 S.E.2d 719 (1982) and its progeny is a remedial statute that does not impact a vested or substantive right. Accordingly, its provisions are applicable irrespective of when the cause of action accrued or when the claim or suit is filed, thereby imposing an affirmative duty on the part of the plaintiff to mitigate any claim for past and/or future wages and requiring an award, if any, of back pay and front pay to be reduced by the amount of interim earnings or the amount that may be earned with reasonable diligence by the plaintiff. Thus, we answer the first certified question in the affirmative.

### B. West Virginia Code § 55-7-29

We now turn to the second certified question, which is whether West Virginia Code § 55-7-29 applies to a case that is based upon a claim for unlawful discriminatory discharge that occurred prior to June 8, 2015, and is set for trial after that effective date of West Virginia Code § 55-7E-3. West Virginia Code

---

**5.** A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 41, p. 263 (2012).

§ 55-7-29 pertains to punitive damages and states in relevant part as follows:

(a) An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

(b) Any civil action tried before a jury involving punitive damages may, upon request of any defendant, be conducted in a bifurcated trial in accordance with the following guidelines:

(1) In the first stage of a bifurcated trial, the jury shall determine liability for compensatory damages and the amount of compensatory damages, if any.

(2) If the jury finds during the first stage of a bifurcated trial that a defendant is liable for compensatory damages, then the court shall determine whether sufficient evidence exists to proceed with a consideration of punitive damages.

(3) If the court finds that sufficient evidence exists to proceed with a consideration of punitive damages, the same jury shall determine if a defendant is liable for punitive damages in the second stage of a bifurcated trial and may award such damages.

(4) If the jury returns an award for punitive damages that exceeds the amounts allowed under subsection (c) of this section, the court shall reduce any such award to comply with the limitations set forth therein.

(c) The amount of punitive damages that may be awarded in a civil action may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater.

W.Va. Code § 55-7-29 (2016). The effective date of this statute was also June 8, 2015.[6]

West Virginia Code § 55-7-29 is similar to West Virginia Code § 55-7E-3 in that both address the process for consideration of damages at trial. The latter statute articulates the evidentiary standard and procedure for an award of punitive damages at trial and imposes a cap on such awards. As explained above, "[s]tatutes which do not create new rights or take away vested ones are deemed to be remedial and are not within the strict application of the rule of presumption against retroactivity." *Mildred L.M.*, 192 W.Va. at 351 n.10, 452 S.E.2d at 445 n.10 (citation omitted).

 In reliance on the same authorities cited in our discussion of the first certified question, we hold that West Virginia Code § 55-7-29 is a remedial statute that does not impact a vested or substantive right. Accordingly, its provisions are applicable irrespective of when the cause of action accrued or when the claim or suit is filed. As such, West Virginia Code § 55-7-29 is not subject to a retroactivity analysis under syllabus point 2 of *Public Citizen.* As the Supreme Court of the United States explained in *Landgraf*:

Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.

*Landgraf*, 511 U.S. at 273, 114 S.Ct. 1483. A plaintiff has no right, much less a vested right, to an award of punitive damages prior to trial. Thus, we answer the second certified question in the affirmative.

## IV. CONCLUSION

Having answered each of the two certified questions in the affirmative, this matter is dismissed from the docket of this Court.

Certified questions answered.

CHIEF JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.

JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

---

**6.** 2015 W.Va. Acts ch. 6.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

LOUGHRY, C.J., concurring, joined by KETCHUM, J.:

The Legislature, in enacting West Virginia Code § 55-7E-3, commendably sought to eradicate West Virginia's outlier status regarding unmitigated back and front pay in employment claims and thereby eliminate an unjustifiable windfall to plaintiffs. The duty of an injured plaintiff to mitigate damages is a long-standing and universally recognized principle that *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982), obliterated, thereby creating a blight on our state's wrongful discharge law. West Virginia Code § 55-7E-3 further recognizes the surreptitious manner in which *Mason County* was extended to allow not only unmitigated back pay, but front pay as well. *See Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 184, 680 S.E.2d 791 (2009) (applying *Mason County* to front pay award in absence of new syllabus point). This statute laudably imposes a legislative check on the Court's prior attempts at "judicial legislation." Properly venerating the clarity of the statute and its intended reach, the majority succinctly concludes that damages are not vested rights and that the Legislature clearly intended the statute to affect every award of damages from the effective date of the statute. Therefore, I concur with the majority's conclusion that West Virginia Code § 55-7E-3 and West Virginia Code § 55-7-29, which limits punitive damages, are remedial statutes applicable to causes of action that accrued and/or were filed prior to the statute's effective date.

The Legislature left little doubt of its intentions in enacting West Virginia Code § 55-7E-3. In its declaration of purpose, the Legislature stated:

The citizens and employers of this state are entitled to a legal system that provides adequate and reasonable compensation to those persons who have been subjected to unlawful employment actions, a legal system that is fair, predictable in its outcomes, and a legal system that functions within the mainstream of American jurisprudence.... The goal of compensation remedies in employment law cases is to make the victim of unlawful workplace actions whole, including back pay; reinstatement or some amount of front pay in lieu of reinstatement; and under certain statutes, attorney's fees for the successful plaintiff.

W.Va. Code § 55-7E-2(a)(2) and (3). However, the Legislature noted that "[i]n West Virginia, the amount of damages recently awarded in statutory and common law employment cases have been inconsistent with established federal law and the law of surrounding states. This lack of uniformity in the law puts our state and its businesses at a competitive disadvantage." *Id.* at § 55-7E-2(a)(4). Accordingly, it enacted this statute with the precise objective to eliminate unmitigated front and back pay, and expressly indicated by the absence of any provision to the contrary, that this injustice would be abolished concurrent with the effective date of the statute.

Front pay has been aptly described as requiring "a sensitivity to the competing interests of the employee, on the one hand, in being made whole and the employer, on the other hand, in being spared the duty to subsidize a prospective windfall." *Quinlan v. Curtiss-Wright Corp.*, 425 N.J.Super. 335, 41 A.3d 739, 749 (2012). Observing that the duty to mitigate damages in wrongful discharge cases is "rooted in an ancient principle of law," the United States Supreme Court has held that federally-based employment claims "require[] the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The rationale underlying the duty to mitigate is obvious: "Since only actual losses should be made good, it seems fair that deductions

should be made not only for actual earnings by the worker but also for losses which he willfully incurred." *Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 198, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). Accordingly, the legislative foreclosure of unmitigated front and back pay returns West Virginia to the mainstream of jurisprudence on such awards and equitably prohibits employer subsidy of "prospective windfall[s]." *Quinlan*, 41 A.3d at 749.

The equity of West Virginia Code § 55-7E-3 notwithstanding, it is clear that the majority's conclusion that the statute applies to damages awards rendered for actions accruing and/or filed before the statute's enactment is likewise sound. "[P]rocedural and remedial laws generally do not affect vested rights, which are property rights that the Constitution protects like any other property. Such procedural and remedial laws that do not affect vested rights should be enforced as they exist at the time judgment is rendered." *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) (citations omitted); *see also* 16A C.J.S. Constitutional Law § 498 ("Unless the remedy is one that is expressly protected by a constitutional provision, there is no vested right to a particular remedy, and existing remedies may be changed or abolished provided a substantial remedy remains.").

With respect specifically to statutes affecting remedies that are enacted while matters are pending, "[i]t is well established that a plaintiff has no vested property right in a particular measure of damages, and that the Legislature possesses broad authority to modify the scope and nature of such damages." *Am. Bank & Trust Co. v. Cmty. Hosp.*, 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670, 676 (1984); *see also* 16A C.J.S. Constitutional Law § 499 ("A statute which relates merely to matters of remedy may be made applicable to pending proceedings at any time before the final judgment of the court becomes effective."). Indeed, the Fourth Circuit has observed, "[p]rocedural statutes that affect remedies are generally applicable to cases pending at the time of enactment." *Koger v. Ball*, 497 F.2d 702, 706

(4th Cir. 1974). As the United States Supreme Court long-ago explained,

> [c]onsidering the Act … as providing a remedy only, it is entirely unexceptionable. It has been repeatedly decided in this court that the retrospective operation of such a law forms no objection to it. Almost every law, providing a new remedy, affects and operates upon causes of action existing at the time the law is passed.

*Sampeyreac v. United States*, 32 U.S. 7 Pet. 222, 239, 8 L.Ed. 665 1833.

Furthermore, the notion that particular categories of damages are not "vested rights" is well-recognized. The defining characteristics of a "vested right" has been explained as follows: "[A] right has not vested until it is so perfected, complete, and unconditional that it may be equated with a property interest." *White v. Sunrise Healthcare Corp.*, 295 Ill. App.3d 296, 230 Ill.Dec. 197, 692 N.E.2d 1363, 1366 (1998). As the *White* court further explained:

> Because not all expectations are vested rights, a new law is not retroactive "just because it relates to antecedent events, or because it draws upon antecedent facts for its operation." *United States Steel Credit Union v. Knight*, 32 Ill.2d 138, 142, 204 N.E.2d 4 (1965).... [T]his is especially true of statutes that leave substantive rights in place and change only the procedures and remedies used to enforce those rights. Most directly pertinent here, the case law leaves no doubt that, prior to judgment, a plaintiff has no vested right to a statutory penalty such as [ ] punitive damages[.]

230 Ill.Dec. 197, 692 N.E.2d at 1366; *see Weingrad v. Miles*, 29 So.3d 406, 416 (Fla. Dist. Ct. App. 2010) (finding plaintiff "had no vested right to a particular damage award").

The foregoing technical analysis notwithstanding, a plain reading of the statutes at issue demonstrates their applicability and operation. The applicability of the statutes was made clear in the Legislature's precise use of the term "award": "Any *award* of back pay or front pay by a commission, court or jury shall be reduced by the amount of interim earnings or the amount earnable with reasonable diligence by the plaintiff." W.Va.

Code § 55-7E-3(a) (emphasis added); "An *award* of punitive damages may only occur ..." W.Va. Code 55-7-29(a) (emphasis added); "The amount of punitive damages that may be *awarded* in a civil action ..." W.Va. Code 55-7-29(c) (emphasis added). Clearly, the Legislature contemplated application of the statutes to any "award" of such damages, a defined event that occurs only at trial. Even without the necessity of the "vested right" analysis, the statutes' plain language demonstrates that, as of its effective date, any *award* of back pay or front pay must be reduced in accordance therewith and punitive damages may only be awarded in compliance with West Virginia Code § 55-7-29. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). That is to say, "[w]here the language of a statutory provision is plain, its terms should be applied as written and not construed." *DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999).

The Legislature's message is clear: unmitigated front pay and back pay are no longer permitted in West Virginia as of the effective date of the statute. Likewise, limitless punitive damages are no longer available. The Legislature could use no plainer language to convey to the public, litigants, and the courts that West Virginia's outlier status with regard to unrestrained damages awards is not only inequitable and legally imprudent, but harmful to the state and, therefore, its citizens; and that it intends to foreclose such awards immediately. Accordingly, I respectfully concur.

Davis, Justice, dissenting, joined by Justice Workman:

I respectfully dissent to the majority opinion in this case because it is shamefully inconsistent with the established precedent of this State. In order to reach a very result-oriented decision, the majority distorts the paradigm of analysis engaged in by this Court for decades regarding the retroactivity of statutes.

The approach to be utilized in determinations of retroactive or prospective statutory application is very clear. The analysis begins with the presumption that a statute operates only *prospectively* unless the legislative intent for retroactive application is clearly stated. Syl. pt. 3, *Shanholtz v. Monongahela Power Co.*, 165 W. Va. 305, 270 S.E.2d 178 (1980). Exceptions exist where the matters addressed are procedural or remedial; *even those exceptions*, however, *do not apply* where the alterations attach a new legal consequence to a completed event. *See Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 335, 480 S.E.2d 538, 544 (1996) (emphasis added). The majority's opinion is a classic example of the exception swallowing the rule.

As this Court explained in *Public Citizen*, the pertinent inquiry is whether the statutory alteration "diminishes substantive rights or augments substantive liabilities...." *Id.* at 331, 480 S.E.2d at 540. If it does, it is substantive and not retroactive. Even if it is considered procedural or remedial, as the majority believes the two alterations in this case are, *the alteration still is not retroactive* in all instances.[1] This Court previously has warned that "even here the procedural/substantive distinction is not talismanic." *Id.* at 335, 480 S.E.2d at 544.

The test of the interpretive principle laid down by the United States Supreme Court in *Landgraf* is unitary. It is whether the [sic] "the new provision attaches *new legal consequences to events completed before its enactment.*" If a new procedural or remedial provision would, if applied in a pending case, attach a new legal consequence to

---

1. Interestingly, a procedural or remedial statute is often found to be retroactive because it relates to certain issues. For instance, the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), explained that "[r]etroactive legislative provisions may serve legitimate purposes, such as responding to emergencies; correcting mistakes, preventing against the circumvention of a new statute during the time after it is proposed but before it is enacted, and serving to advance health, welfare, or safety." *Id.* at 267-68, 114 S.Ct. at 1498, 128 L.Ed.2d 229. These types of considerations are quite obviously not present in the case *sub judice*.

a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply.

*Id.* (emphasis added) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

In *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006), the United States Supreme Court enunciated the "sequence of analysis" in determining retroactivity, as follows:

[W]e ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of "affecting substantive rights, liabilities, or *duties* [on the basis of] conduct arising before [its] enactment," *Landgraf,* supra, at 278, 114 S.Ct. 1483.... If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the "absen[ce of] a clear indication from Congress that it intended such a result."

548 U.S. at 37, 126 S.Ct. at 2428, 165 L.Ed.2d 323 (emphasis added and citations omitted).[2]

The statutory alterations at issue in the present case undeniably attach new legal consequences to events already accomplished. Specifically, the United States District Court for the Northern District of West Virginia asks this Court to determine whether two recently enacted statutes, which limited the amount of damages the plaintiff would be entitled to receive, can be applied retroactively. The facts show that the plaintiff's cause of action for wrongful termination accrued on September 13, 2013, the date of his discharge. In 2015, the West Virginia Legislature enacted two statutes that limited damages in civil litigation. The first statute, W. Va. Code § 55-7E-3, reduced the amount of front-pay and back-pay a fired employee could receive for failure to mitigate damages, even if he or she proved the employer had acted with malice. The second statute, W. Va. Code § 55-7-29, placed a cap on the amount of punitive damages a plaintiff may receive. Because both statutes were enacted *after* the plaintiff's cause of action accrued, the District Court asked this Court to decide whether the statutes could be applied to the plaintiff. I strongly disagree with the majority's opinion that the statutes are procedural and remedial and can be applied retroactively.[3]

Over one hundred years ago, this Court held the following in Syllabus point 3 of *Rogers v. Lynch*, 44 W. Va. 94, 29 S.E. 507 (1897):

No statute, however positive, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and the courts will apply new statutes only to future cases unless there is something in the very nature of the case or in the language of the new revision which shows that they were intended to have a retroactive operation.

---

**2.** *See Landgraf*, 511 U.S. at 283, 114 S.Ct. at 1507, 128 L.Ed.2d 229 (holding that Civil Rights Act of 1991 could not be retroactively applied because its punitive damages provision established new right to monetary relief). *See also U.S. Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908) ("There are certain principles which have been adhered to with great strictness by the courts in relation to the construction of statutes as to whether they are or are not retroactive in their effect. The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.").

**3.** Because both statutes limit damages, I will not make a distinction between them in this discussion. However, it is obvious that the new statute regarding mitigation of damages creates and imposes upon the plaintiff a distinctly different duty than that which existed at the time of his termination, thus altering the legal consequence of the his actions immediately following his termination. Likewise, the placement of a new cap on punitive damages alters the rights the plaintiff had as of the time of the alleged wrongful act. *See, e.g., Heffelfinger v. Connolly*, No. 3:06-CV-2823, 2009 WL 112792, at *3 (N.D. Ohio Jan. 15, 2009) ("Ohio courts construing earlier damage cap statutes have similarly concluded that the date plaintiff's cause of action accrued ... is the relevant date for determining whether a new damages regime applies.").

*See* Syl. pt. 3, *Shanholtz*, 165 W.Va. at 306, 270 S.E.2d at 179 ("A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute."). *See also* Syl. pt. 5, *Arnold v. Turek*, 185 W. Va. 400, 407 S.E.2d 706 (1991) ("Statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect, and the statute in effect on the date of the decedent's death will control.").[4] Until the majority's opinion in this case, our law has been crystal clear that a statute operates prospectively absent a clear legislative intent to the contrary. There is absolutely no language in either W. Va. Code § 55-7E-3 or W. Va. Code § 55-7-29 that evidences a legislative intent that either statute should apply retroactively. The majority's opinion has tortured time-honored legal principles in order to reach a result that, as I will show, the overwhelming majority of the courts in the country have resolutely rejected.

·It has been recognized that "most courts that have considered the issue disallowed retroactive application of· a statutory damages cap." *Prince George's Cty. v. Longtin*, 419 Md. 450, 487, 19 A.3d 859, 881 (2011).[5] *See Miles v. Weingrad*, 164 So.3d 1208, 1213 (Fla. 2015) (determining that statutory cap on damages could not be applied retroactively as "precedent from this Court 'has refused to apply the statute retroactively if it impairs

vested rights, creates new obligations or imposes new penalties.'" (citation omitted)); *Socorro v. New Orleans*, 579 So.2d 931 (La. 1991) (same); *United States v. Searle*, 322 Md. 1, 6, 584 A.2d 1263, 1265 (1991) (same); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 760 (Mo. 2010) (same); *Estate of Bell v. Shelby Cty. Health Care Corp.*, 318 S.W.3d 823, 833 (Tenn. 2010) (same); *Neiman v. Am. Nat'l Prop. & Cas. Co.*, 236 Wis. 2d 411, 422, 428, 613 N.W.2d 160, 164-65, 167 (2000) ("'Strong common-law tradition defines the legislature's primary function as declaring law to regulate future behavior. Thus, as a matter of justice, no law should be enforced before people can learn of its existence and conduct themselves accordingly. In short, retroactivity disturbs the stability of past transactions.'" (citations omitted)); *Martin by Scoptur v. Richards*, 192 Wis. 2d 156, 212, 531 N.W.2d 70, 93 (1995) (same); *Berghauer ex rel. Estate of Berghauer v. Heyl*, 249 Wis. 2d 488, 639 N.W.2d 223 (Wis. Ct. App. 2001) (same); *Bramble v. Virgin Island Port Auth.*, No. ST-06-CV-678, 2015 WL 1744241, at *6 (V.I. Super. Apr. 10, 2015) (same). *See also Alamo Rent-A-Car v. Mancusi*, 632 So.2d 1352, 1358 (Fla. 1994) (same); *Exec. Builders, Inc. v. Trisler*, 741 N.E.2d 351, 361 (Ind. Ct. App. 2000) (same); *Murphy Homes, Inc. v. Muller*, 337 Mont. 411, 429, 162 P.3d 106, 120 (2007) (same); *Seltzer v. Morton*, 336 Mont. 225, 270, 154 P.3d 561, 595 (2007) (same); *Blair v. McDonagh*, 177 Ohio App. 3d 262, 282, 894 N.E.2d 377, 391 (2008) (same).[6] The

---

**4.** This Court has applied these principles in a variety of contexts. In *Beard v. Lim*, 185 W.Va. 749, 408 S.E.2d 772 (1991), for instance, this Court addressed the issue of alterations to a statute regarding prejudgment interest as applied to special damages and observed that changes in the statutory scheme could not be retroactively applied. *Id.* at 753 n.7, 408 S.E.2d at 776 n.7.

**5.** The court in *Prince George's County* also noted:

> It is patent that the enormous loss to … [the plaintiff] from application of the statutory cap would 'impair' his cause of action. Accordingly, we agree with the Court of Special Appeals that … [the plaintiff] had a vested right in bringing his cause of action—with no statutory cap on damages—prior to the enactment of the … [Local Government Tort Claims Act] revisions. Although the legislature may, in its wisdom, limit tort damages prospectively, *see, e.g., Murphy v. Edmonds* [,] 325 Md. 342, 601 A.2d

102 (1992) (upholding statutory cap on non-economic tort damages which applied prospectively), the constitution protects against retroactive application of these limitations.

419 Md. at 489-90, 19 A.3d at 883.

**6.** *Compare Carswell v. Oklahoma State Univ.*, 62 P.3d 786, 789 (Okla. Civ. App. 2003) (holding statute that increased the amount of· recovery effected a substantive change in the law and operates prospectively); *Greenvall v. Maine Mut. Fire Ins. Co.*, 788 A.2d 165, 167 (Me. 2001) (same); *Schultz v. Natwick*, 249 Wis. 2d 317, 328, 638 N.W.2d 319, 325 (Wis. Ct. App. 2001) (same); *and Greenwald v. Sugarloaf Residential Prop. Owners Ass'n, Inc.*, No. A17A0420, 341 Ga.App. 451, 454, 800 S.E.2d 621, 623–24, 2017 WL 2243130, at *3 (Ga. Ct. App. May 23, 2017) (statute permitting award of attorney's fees and expenses could not be applied to case filed before effective date of statute).

reason for this is that "[a]pplication of a damages cap deprives a person of compensation, just as abrogating a cause of action does." *Prince George's Cty.*, 419 Md. at 487, 19 A.3d at 881.

Although the majority's opinion, at its best, crudely tries to argue that a law limiting damages is procedural and remedial, this argument is hollow and woefully unconvincing. It was observed in *Estate of Bell* that "for more than three decades Tennessee's appellate courts have consistently ruled that a change to the law that alters the amount of damages constitutes a substantive, as opposed to a procedural or remedial, change." 318 S.W.3d at 829-30. A statute altering the amount of damages "is clearly substantive as opposed to merely procedural because it has the effect of changing the law regarding the amount of damages recoverable in personal injury lawsuits. The very substance of the claim for damages, the amount thereof, is affected by the legislation." *Socorro*, 579 So.2d at 944. In *Klotz*, the court articulated an "underlying repugnance" to a retroactive application of laws and held that a court "cannot change the substantive law for a category of damages after a cause of action has accrued[.]" *Klotz*, 311 S.W.3d at 760.

To be clear, "[u]nder the great weight of authority, the measure and elements of damages are matters pertaining to the substance of the right and not to the remedy." *Thomas v. Cumberland Operating Co.*, 569 P.2d 974, 977 (Okla. 1977). Thus, "[s]tatutes and amendments imposing, removing or changing a monetary limitation on recovery for personal injuries or death are generally held to be prospective only." *Thomas*, 569 P.2d at 976. For example, in *Seltzer*, the plaintiff brought an action against the defendants for malicious prosecution and abuse of process. 336 Mont. at 228, 154 P.3d at 569-70. A jury returned a verdict in favor of the plaintiff that included punitive damages. *Id.* at 267, 154 P.3d at 593. On appeal, the defendants argued that the punitive damages should have been reduced based upon a recently enacted cap on such damages. The appellate court disagreed, ruling as follows:

In *Dvorak v. Huntley Project Irrigation District*, 196 Mont. 167, 639 P.2d 62,

(1981), . . . the jury returned a verdict for plaintiffs in the amount of $5,000 compensatory damages and $40,000 punitive damages against each of the three defendants. On appeal, this Court considered whether a statute prohibiting punitive damages awards against government entities was applicable to a cause of action that arose before the statute was enacted. . . . In resolving the appeal, this Court observed that the plaintiffs' cause of action arose in 1974, while § 2-9-105, MCA, was not enacted until 1977. Even though § 2-9-105, MCA, was in effect when the jury rendered its verdict in 1980, this Court held that the statute was not applicable to the case because it was enacted after the plaintiffs' cause of action arose.

. . . .

Here, in its post-verdict order reviewing the punitive damages awards, the District Court relied on *Dvorak* in concluding that except as otherwise expressly provided by the Legislature, a new law limiting recovery of punitive damages does not apply to punitive damages awarded on a claim that accrued prior to the effective date of the statute. Thus, observing that Seltzer's tort claims accrued prior to the effective date of [the statute], the District Court determined that the statutory cap does not require a reduction of the jury's punitive damages awards against the Defendants. We agree.

*Seltzer*, 336 Mont. at 268-70, 154 P.3d at 594-95 (internal quotations omitted).

Additionally, in *Alamo Rent-A-Car*, the plaintiff filed an action for malicious prosecution against the defendant. 632 So.2d at 1354. A jury returned a verdict for the plaintiff. One of the issues raised on appeal was whether a statutory amendment that capped punitive damages applied retroactively to the plaintiff's cause of action. The Florida Supreme Court held that it did not for the following reasons:

The amendment became effective October 1, 1987. The instant cause of action arose during September 1986, which was . . . before the effective date of the amendment. This action was filed on October 2, 1987, one day after the effective date of the

amendment. To determine whether the amendment applies to the instant cause of action, we must examine whether the amendment is one of substantive or procedural law.

A substantive statute is presumed to operate prospectively rather than retrospectively unless the Legislature clearly expresses its intent that the statute is to operate retrospectively. This is especially true when retrospective operation of a law would impair or destroy existing rights. Procedural or remedial statutes, on the other hand, are to be applied retrospectively and are to be applied to pending cases.

... [S]ubstantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights. Following this rationale, we find section 768.73(1)(a) to be a substantive rather than procedural statute. Punitive damages are assessed not as compensation to an injured party but as punishment against the wrongdoer. Consequently, a plaintiff's right to a claim for punitive damages is subject to the plenary authority of the legislature. The establishment or elimination of such a claim is clearly a substantive, rather than procedural, decision of the legislature because such a decision does, in fact, grant or eliminate a right or entitlement. Because we find that section 768.73(1)(a) is substantive rather than procedural, we find that the amendment to section 768.73(1)(a) does not apply to the instant cause of action. This is true even though Mancusi's cause of action was filed after the effective date of the amendment.

*Alamo*, 632 So.2d at 1358 (internal citations omitted).

Finally, in *Martin by Scoptur*, a child and her parents brought a medical malpractice claim for treatment the child received after she suffered injuries from riding her bicycle into the back of a truck. 192 Wis. 2d at 162-63, 531 N.W.2d at 73. At the time of the injury, there was no limit on the amount of noneconomic damages a plaintiff could recover in a medical malpractice action. Almost a year after the malpractice occurred, the leg-islature enacted a cap on such damages of $1,000,000. The plaintiffs subsequently filed a medical malpractice action, and a jury awarded the plaintiffs $2,150,000 in noneconomic damages. On appeal, the Wisconsin Supreme Court held that applying the cap to the plaintiffs' verdict would have changed what they would have recovered under the law that existed at the time of the accident. In finding the cap could not apply retroactively, the Supreme Court reasoned as follows:

> Since the cause of action accrued at a time when no cap existed on the amount of noneconomic damages recoverable, application of the cap to the Martins' cause of action constitutes a retroactive application. If we allowed the cap, it would act here to limit the recovery of a cause of action which, when it accrued, was unlimited.
>
> . . . .
>
> To deprive the Martins and litigants like them of their recovery in the ephemeral hope that this retroactive application will further the few purposes cited for the retroactive application of the cap, violates the most fundamental notions of fairness and strikes at the heart of due process.
>
> Accordingly, we hold that retroactive application of the cap on noneconomic damages ... would be unconstitutional under the Due Process Clause of the United States and Wisconsin Constitutions.

*Id.* at 199 & 212, 531 N.W.2d at 88 & 93.

In the final analysis, "legislation which involves mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively." *Fowler Props., Inc. v. Dowland*, 282 Ga. 76, 78, 646 S.E.2d 197, 200 (2007). This basic principle of fairness has been unjustifiably gutted by the majority's unbalanced, severely skewed, and result-driven scales of justice.

In view of the foregoing, I dissent. I am authorized to state that Justice Workman joins me in this dissenting opinion.