# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Steven W. Funt,**
**Plaintiff Below, Petitioner**

**vs.) No. 21-0157** (Morgan County CC-33-2018-P-17)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven W. Funt, by counsel Ronald L. Walters Jr., appeals the Circuit Court of Morgan County's January 26, 2021, order denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Patrick Morrisey and Lara K. Bissett, filed a response in support of the circuit court's order to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 5, 2016, the grand jury indicted petitioner of two felony counts of breaking and entering; one count of misdemeanor petit larceny; one count of misdemeanor entering without breaking of automobile; one misdemeanor count of destruction of property; one count of felony grand larceny; and two counts of misdemeanor possession of a controlled substance.

Petitioner's criminal trial began on August 3, 2016, and the jury found him guilty of one count of felony offense breaking and entering and one count of petit larceny on August 4. Petitioner was acquitted on the remaining charges. The State then filed a recidivist information, which petitioner's counsel moved to dismiss arguing that a life sentence would amount to cruel and unusual punishment. Petitioner's motion to dismiss was denied, and the recidivist action proceeded to trial on October 6, 2016. At the conclusion of the recidivist trial, petitioner was found to be the same person previously convicted of the felony offenses of unlawful assault/escape in Morgan County Case No. 97-F-41; attempted possession of a controlled substance with intent to distribute in Morgan County Case No. 03-F-44; and grand larceny as contained in Morgan County Case No.

1

06-F-35. Thereafter, petitioner's counsel filed a renewed motion to dismiss the recidivist information, which was denied by the circuit court. The court sentenced petitioner to life in prison with eligibility for parole after fifteen years by order entered on November 15, 2016. Petitioner appealed his conviction and sentence to this Court, and both were affirmed by memorandum decision in *State v. Funt*, No. 16-1169, 2017 WL 4772889 (W. Va. Oct. 23, 2017)(memorandum decision) ("*Funt I*").

Petitioner filed a petition for a writ of habeas corpus before the circuit court, asserting ineffective assistance of counsel, violations of his Sixth Amendment rights, improper comments by the trial judge, improper comments by the prosecutor, and disproportionality of his sentence. The court held an omnibus evidentiary hearing on November 24, 2020. In a lengthy, detailed order denying petitioner's petition for a writ of habeas corpus, the circuit court addressed each of these allegations and found them to be without merit. With regard to his contention that trial counsel failed to object to the admission of certain photographs, it found that petitioner failed to satisfy the *Strickland*[1] standard, noting that the only enhancements made to the photographs were that they were "lightened" and that, rather than attack the admissibility of photographs,

> which would have eventually come in, counsel cross-examined Lt. Stapleton about the individual in the photos. The jury had already heard testimony about the enhancements, testimony which it presumably considered in evaluating the photos. . . . The [c]ourt FINDS that counsel was attempting to show that the individual in the photos could not be positively identified as [p]etitioner. . . . If it worked, [p]etitioner would have no argument. Here, the [c]ourt FINDS that [p]etitioner attempts to persuade this [c]ourt that said strategy was an unreasonable defense.

It went on to find that petitioner testified during the evidentiary hearing that he was aware of the trial strategy and agreed with the same.

He also argued that his trial counsel was ineffective because counsel failed to object to Lt. Stapleton's lay opinion testimony regarding the photographs. The circuit court concluded that that argument did not satisfy the *Strickland* standard. According to the court's order, petitioner asserted that his attorney should have objected to Lt. Stapleton's testimony regarding the facial characteristics of the person in the game camera photos, arguing that this was improper lay opinion testimony that caused a litany of errors. The court found that "this argument ignores the context in which this testimony was elicited; it was made to explain why Lt. Stapleton did not believe the individual in the photos to be [C.W.[2]]" The court went on to find that "this testimony was countered by cross-examination. Finally, the [c]ourt FINDS the photographs were not the only evidence

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).
[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because there was an abuse and neglect proceeding against C.W. and his wife B.W. that is discussed herein, it is necessary to use the initials of these witnesses in this memorandum decision.

2

which directly implicated [p]etitioner." According to the circuit court, Lt. Stapleton had personal knowledge and the ability to perceive the facial characteristics of C.W., petitioner, and the person in the photos.

> Stapleton's opinion was that specific characteristics [of the] face of the person in the photographs was similar to features on [petitioner's] face. This was plainly and rationally connected to particular facts about [petitioner's] physical characteristics which Stapleton did know. And this opinion helped the jury in understanding why Lt. Stapleton had determined the person in the photos to be someone other than B.W. and C.W. Petitioner cannot cite to any authority which required Lt. Stapleton to have special training to make his rational observations. Thus, Lt. Stapleton's testimony about the person in the photographs was permissible lay opinion testimony, which the trial court was unlikely to sustain objections against.

It, therefore, concluded that counsel did not err by declining to object to Lt. Stapleton's testimony and that petitioner failed to show a reasonable probability that the outcome would have been different had counsel objected.

The court also addressed petitioner's contention that counsel was deficient for not raising objections to two statements made by the victim, Danny Omps, asserting that the testimony was barred under Rule 404(b) of the West Virginia Rules of Evidence.[3] The circuit court, however, determined that that evidence was not evidence of prior bad acts tied to petitioner in any way. Mr. Omps testified that he had a number of lights around the exterior of his home and specifically testified that he remembered a time his floodlights were not working because there were several times the lights were loose. Petitioner argued below that that testimony was "clearly elicited by the State in an effort to tie [petitioner] to the prior alleged break-ins by showing a common plan or scheme." In addressing that contention, the circuit court found that that line of questioning was to establish the circumstances of break-ins that led Mr. Omps to install cameras in his garage, "testimony which [p]etitioner admits the parties had agreed to. . . . [T]his testimony neither triggered the need for an evidentiary objection nor prejudiced [p]etitioner." Petitioner also argued that his counsel should have objected to Mr. Omps's testimony that the last break-in in his garage was December 2, 2015, but the court found the question did not implicate petitioner or any other individual as the actor. The court went on to find that even if counsel was deficient, petitioner had again failed to demonstrate a reasonable probability of a different outcome.

In his final allegation of ineffective assistance of trial counsel, petitioner asserted that trial counsel failed to object to comments made by the prosecutor during closing arguments: (1) that petitioner's and Mr. Omps's houses were approximately two-tenths of a mile apart; and (2) arguments related to the credibility of Elizabeth Hartley, petitioner's alibi witness. The circuit court found that neither comment was so extensive or misleading so as to constitute reversible error. "Furthermore, the proof which established [p]etitioner's guilt was strong. Therefore, the [c]ourt FINDS that counsel was not deficient in not raising objections, and in any event [p]etitioner

---

[3] Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

was not prejudiced by these comments."

Petitioner also alleged that his appellate counsel was deficient by failing to raise "a litany of the constitutional and underlying evidentiary claims" petitioner asserts in the habeas action. The circuit court specifically found that "since these issues were either not plain errors or otherwise not valid claims, [p]etitioner's claim on appellate counsel's conduct fails." It further determined that "[p]etitioner was represented by competent and zealous counsel at trial, and the evidence against [p]etitioner was properly admitted. Had appellate counsel raised these issues on appeal, the Supreme Court of Appeals would not have found them to warrant reversal." With regard to his assertion that appellate counsel failed to raise a Sixth Amendment Confrontation Clause issue related to witnesses B.W. and C.W., related to an active child abuse and neglect proceeding, the court found that such questioning "would have flagrantly violated the strict confidentiality warranted by child abuse and neglect, and clearly fell outside the ambit of Confrontation Clause rights" so [a]ppellate counsel was not deficient by declining to bring this "outrageous claim."

Within that portion of the order, the circuit court also addressed petitioner's assertion that the trial judge made improper comments. It concluded that the trial judge's evidentiary rulings during Ms. Hartley's testimony

in no way indicated a factual opinion by a trial judge. In fact, the judge took pains to explain the law plainly, completely, and accurately to the jury. Petitioner takes the judge's ruling out of context, and assuming appellate counsel made a complete review of the trial transcript, the decision not to raise this issue was clearly reasonable.

The court also found that trial counsel was not ineffective for failing to object to the admission of certain photographs, as petitioner clearly consented to the taking of those photographs. It found that petitioner did not dispute that on December 10, 2015, petitioner consented to a search of an outbuilding on his property, after being asked for consent by Lt. Stapleton, and he did not allege that he revoked that consent. Petitioner, instead, argued that he provided limited consent to search that outbuilding, which did not include taking photographs. The circuit court found, however, that petitioner gave Lt. Stapleton oral consent to search the outbuilding, which "also gave implied consent for him to take pictures." Therefore, there was no basis for trial counsel to object.

The circuit court went on to find that petitioner had no Confrontation Clause right to question witnesses about an active child abuse and neglect case in open court. In so doing, the court found that "[n]ot only was [B.W. and C.W.'s] abuse and neglect case totally irrelevant to [p]etitioner's case, but [p]etitioner would have the trial court take the unprecedented step of finding the Sixth Amendment to require the disclosure of this strictly confidential information in open court through cross-examination." It determined that the trial court followed and applied the law in ruling that petitioner had no right to question B.W. and C.W. regarding their abuse and neglect proceeding and the prosecutor's involvement in both cases was irrelevant.

In addressing the proportionality of petitioner's recidivist sentence, the circuit court found that that issue had already been litigated and held not violative of his constitutional rights. As the

circuit court found, petitioner's sentence was imposed pursuant to West Virginia Code § 61-11-18(c), which has been previously addressed by this Court and found to be proportional. Further, to the extent the issue needed to be litigated here, petitioner's sentence is plainly not disproportionate. It noted that petitioner had four convictions that involved the actual or potential use of violence: unlawful wounding, two counts of grand larceny, and breaking and entering. It, therefore, found that petitioner had demonstrated a continuous course of illegal activities that carry the inherent risk of violent confrontation. Further, as this Court has found, petitioner's triggering and underlying convictions are serious crimes that carried the very real risk of danger and physical violence to petitioner's victims.

Finally, the circuit court found that trial counsel presented proper argument challenging the disproportionality of the imposition of a life sentence on petitioner. Counsel argued that a life sentence was disproportionate to petitioner's underlying conviction. However, this Court has found that petitioner's life sentence under the recidivist statute was not disproportionate. Petitioner appeals from that January 26, 2021, order.[4]

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner first argues that the 2020 amendment to West Virginia Code § 61-11-18 makes clear that breaking and entering an unattached structure is not a violent felony. He asserts that the former version of West Virginia Code § 61-11-18(c) provides that a person who has twice before been convicted of a crime punishable by confinement in a penitentiary shall be sentenced to life; this was the version under which petitioner was sentenced. However, the 2020 version of West Virginia Code § 61-11-18(d), which is the newly cast version of § 61-11-18(c), provides that a person who was twice before convicted of a crime punishable by confinement in a penitentiary which has the same elements as a qualifying offense, shall be imprisonment for life. Petitioner argues that the 2020 amendments to the recidivist statute are procedural in nature and, therefore, should be given retroactive effect. *See* Syl. Pt. 3, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017) ("Statutory changes that are purely procedural in nature will be applied retroactively.").

This Court, however, agrees with respondent that the amendments to West Virginia § 61-11-18 are inapplicable to petitioner, and the circuit court did not abuse its discretion or otherwise

---

[4] Because petitioner's statement of the case lacks any citation to the record, we remind petitioner's counsel of the requirements of Rule 10(c)(4) of the West Virginia Rules of Appellate Procedure, which provides as follows: "Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error."

err in finding that petitioner's proportionality challenge to his recidivist life sentence has been previously, fully, and finally adjudicated so it cannot be relitigated now. While petitioner is correct that the crime for which he was convicted, breaking and entering, as defined by West Virginia Code § 61-3-12, is not included in the list of qualifying crimes in the amended recidivist statute, there is no support for petitioner's contention that it should be retroactively applied. *See Martinez,* 239 W. Va. at 613, 803 S.E.2d at 583, Syl. Pt. 2 (citations omitted) ("The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect."). Respondent asserts that the amendment to the recidivist statute contains no such language. Further, this Court has recognized the inapplicability of the amendments to the recidivist statute in recent proportionality challenges where the sentences pre-dated the amendments. *See State v. Plante*, 19-0109, 2020 WL 6806375, at *1 n.1 (W. Va. Nov. 19, 2020)(memorandum decision); *State v. Ingram*, No. 19-0016, 2020 WL 6798906 at *1, n.2 (W. Va. Nov. 19, 2020)(memorandum decision). Therefore, we find that petitioner is not entitled to relief on this ground.

Petitioner next argues that his life sentence violates the Eighth Amendment requirement of proportionality. According to petitioner, he had three prior felony convictions, the most serious being his convictions for unlawful wounding and felony escape in 1997 when petitioner was just nineteen years old. He was subsequently convicted of attempted possession of a controlled substance with intent to distribute in 2004 and two counts of grand larceny in 2006. The instant conviction was for breaking and entering. Petitioner contends that the "only truly violent felony on [his] record is the unlawful wounding." He asserts that the breaking and entering convictions did not involve actual or threatened violence. According to petitioner, this is not the kind of offense that warrants the application of a life sentence, and petitioner's recidivist life enhancement represents an arbitrary and disproportionate application of the statute.

As this Court set forth in *Funt I*,

Contrary to petitioner's argument, the record on appeal indicates that the circuit court explicitly considered the proportionality of petitioner's lifetime recidivist sentence after petitioner filed his recidivist pretrial motions. The court heard the parties' arguments on the issue, requested additional briefing, and ultimately denied petitioner's pre-trial motion. The circuit court noted on the record that this Court "upheld the imposition of the life recidivism after three felonies on property crimes." Following petitioner's current recidivist conviction, he renewed his previous motion at a posttrial hearing and the circuit court again denied petitioner's motion on the record and by order entered on November 22, 2016. . . . This Court has articulated a test for application of the life recidivist statute:

The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine

6

> if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute."

Syl. Pt. 7, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). Petitioner's most recent offense, and the one triggering the recidivist life sentence, was breaking and entering. He was previously convicted twice for grand larceny. Both of these crimes are crimes that justify the application of the recidivist statute. Further, as to the underlying offenses involved in this case, we have already upheld the imposition of a life sentence under the recidivist statute in cases where the underlying felonies were grand larceny and breaking and entering. *See State v. Oxier,* 179 W.Va. 431, 369 S.E.2d 866 (1988) (imposition of a life sentence upheld where defendant's most recent conviction was for breaking and entering and the underlying felonies consisted of two breaking and entering convictions and a grand larceny conviction); *see also* [*State v.*] *Vance,* 164 W.Va. [216,] 223-225, 262 S.E.2d [423,] 428 [1980]. Therefore, we find that petitioner's most recent convictions for breaking and entering and grand larceny were crimes that involved the threat of harm or violence. Thus, the circuit court's imposition of a recidivist life sentence pursuant to West Virginia Code § 61-11-18 did not violate the proportionality doctrine as prohibited by the West Virginia Constitution.

*Funt I*, at \*3. We find no reason to disturb our earlier conclusion as to this issue, and the circuit court did not err in denying petitioner relief on this ground.

Petitioner's third assignment of error is that he received ineffective assistance of trial counsel and appellate counsel on multiple grounds. With regard to trial counsel, petitioner asserts that counsel failed to challenge the admissibility of evidence and failed to object to (1) improper lay witness testimony proffered by Lt. Stapleton; (2) the admission of improper Rule 404(b) evidence; (3) improper comments made by the prosecuting attorney during her closing argument; and (4) the improper admission of photographs that the investigating officer took in the search of petitioner's outbuilding. In his reply, petitioner argues that, taken together, counsel's introduction of photographic evidence, failing to object to lay testimony regarding the photos, and failing to object to the trial court's statements and the prosecutor's improper statements during closing were objectively unreasonable; but for those acts and omissions, it is probable that the State could not have met its burden to prove petitioner's guilt beyond a reasonable doubt. Petitioner contends that if defense counsel had not introduced the photographs, they would not have been admissible since the State chose not to bring in the individual who altered them.

Further, petitioner asserts that Mr. Omps improperly provided testimony, pursuant to Rule 404(b) of the West Virginia Rules of Evidence, regarding prior break-ins at his property. In support of that argument, petitioner quotes testimony from Mr. Omps wherein he testified that he had floodlights and motion-activated lights but that he had to tighten the bulbs more than once. The State also inquired as to the last time Mr. Omps's garage was broken into. Petitioner asserts that because Mr. Omps identified December 2 as the last time the garage was broken into, that implied that petitioner was responsible for the alleged break-ins because police began investigating petitioner shortly thereafter.

7

With regard to the alleged ineffective assistance of appellate counsel, petitioner argues that his counsel was ineffective because he failed to raise numerous grounds on appeal, instead raising only two issues: the admission of petitioner's prior verdict during his recidivist trial and the proportionality of petitioner's recidivist life sentence. However, he failed to raise the violation of petitioner's Sixth Amendment right to confront and cross-examine the witnesses against him, specifically to question B.W. and C.W. about their abuse and neglect proceeding. Petitioner further argues that his appellate counsel also failed to raise two additional plain errors apparent from the record: improper argument by the prosecutor during her closing argument and improper remarks made by the trial judge. Finally, he asserts that appellate counsel was ineffective for failing to file a petition for rehearing on petitioner's direct appeal.

As we have found,

the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland [v. Washington]*, 466 U.S. [668,] 689-90, 104 S.Ct. [2052,] 2065-66, 80 L.Ed.2d [674,] 694-95 [(1984)]. In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995).

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland* . . . : (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*[.]

Syl. Pt. 3, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

In reviewing [*Strickland's* first prong,] counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances,

8

the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Miller*, 194 W. Va. at 6-7, 459 S.E.2d at 117-18, Syl. Pt. 6. In reviewing the second prong, prejudice, the court looks at whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Vernatter*, 207 W. Va. at 13, 528 S.E.2d at 209, Syl. Pt. 3, in part (quoting *Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part).

Respondent argues that petitioner did not receive ineffective assistance of counsel because, as noted by the circuit court, petitioner's claims of ineffective assistance of counsel either call into question his trial counsel's strategy or are wholly without merit. Even if they were not outside the broad range of professionally competent assistance, there is not a substantial likelihood that the outcome of the trial would have been different if trial counsel had chosen the strategy petitioner now—with the benefit of hindsight—proposes.[5]

Based upon our review of the record, we find that petitioner has failed to satisfy the *Strickland/Miller* standard. With regard to the admission of the photograph depicting a person near the time of the crimes, we find that counsel specifically addressed the issue during the habeas hearing and explained that he believed the photograph did not show petitioner. Petitioner's trial counsel further testified that he showed the photograph to others who agreed with counsel that the photograph did not show petitioner, as they believed another unspecified person was shown in the photograph. It is apparent that counsel believed the photograph at issue would exonerate petitioner so it is clear that the decision to admit it was a strategic decision. In fact, counsel was specifically asked if it was a strategic decision to admit the photograph, and he confirmed that it was. With regard to the photographs of the items found on petitioner's property after the fact, trial counsel testified that petitioner had given consent to search and told police it was

> okay for them to come in and stood right there while [the officer] took the picture after saying he's okay with them searching and didn't object to that. So that was coming in in my view over my objection even if I did . . . so the reason I [admitted

---

[5] Due to the brevity of respondent's substantive argument on this issue, to which petitioner devoted a substantial part of his brief and cited to the record more than twenty times, we remind respondent of the following relevant portion of Rule 10(d) of the West Virginia Rules of Appellate Procedure:

> Unless otherwise provided by the Court, the argument section of the respondent's brief must specifically respond to each assignment of error, to the fullest extent possible. If the respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue.

> the photograph of the person] was because it allowed me to change the focus from the substantial evidence to this picture that did not look like [petitioner].

Thus, it is clear that these were strategic decisions.

We agree with the circuit court's finding that Mr. Omps's testimony regarding his lights and the break-ins at his home did not constitute evidence of prior bad acts tied to petitioner in any way. Early in Mr. Omps's testimony, there were questions regarding cameras on his property, followed by questions regarding outdoor lighting. At the conclusion of an answer regarding the lighting, Mr. Omps volunteered that the last time his lights were not working was on December 2, which he first reported to police on December 3 after he noticed that items were missing. This was a natural lead-in to his testimony regarding the missing items, which was both necessary and relevant to the crimes at issue. While petitioner speculates that that testimony was designed to imply that petitioner was the one who committed the crimes, this is nothing more than self-serving conjecture. Therefore, we cannot find, under the *Strickland/Miller* test, that trial counsel was ineffective in failing to object to that testimony.

As set forth above, petitioner claims his appellate counsel's representation was ineffective because he failed to raise numerous grounds on appeal, instead raising only two issues: the admission of petitioner's prior verdict during his recidivist trial and the proportionality of petitioner's recidivist life sentence. However, he failed to raise the violation of petitioner's Sixth Amendment right to confront and cross-examine the witnesses against him, specifically to question B.W. and C.W. about an abuse and neglect proceeding. While the issue was properly raised by trial counsel in a post-trial motion, appellate counsel did not raise the issue on appeal.

He further asserts that appellate counsel also failed to raise two additional plain errors apparent from the record: improper argument by the prosecutor during her closing argument and improper remarks made by the trial judge. The prosecutor's comments with which petitioner takes issue are that petitioner's red beard hair would appear "whited out" on the photo from the game camera; the comment regarding the distance between petitioner's and the Omps's residences; and the comments regarding Ms. Hartley's credibility. With regard to the trial judge, during Ms. Hartley's examination, trial counsel asked her opinion as to whether petitioner was the individual in the game camera photo, and the prosecutor objected. Without citing the record or quoting from the transcript, petitioner asserts that the judge discussed the admissibility of Ms. Hartley's opinion in order to bolster Lt. Stapleton's opinion testimony.

Petitioner's final ineffective assistance of appellate counsel assertion is that counsel was ineffective for failing to file a petition for rehearing on petitioner's direct appeal given the alleged factual and legal errors in this Court's decision and a subsequent favorable decision regarding recidivist enhancements. Without citing to the record, petitioner asserts that his appellate counsel prepared a motion for rehearing but failed to file it; that petition purportedly alleged that five prior felonies were attributed to petitioner but he had only three because multiple felony convictions were obtained on the same day. Thereafter, this Court issued its opinion in *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017), wherein it overturned a recidivist life sentence under a proportionality analysis. He, therefore, contends that failing to file the petition for rehearing was unreasonable and prejudiced petitioner.

10

With regard to appellate counsel's failure to raise petitioner's Sixth Amendment right to confront B.W. and C.W. regarding a pending abuse and neglect case, we find that, as fully addressed in the following assignment of error, petitioner's rights were not violated based upon the necessarily confidential nature of abuse and neglect proceedings. Therefore, appellate counsel could not have been ineffective in failing to raise the nonmeritorious issue.

Regarding the prosecutor's comments, this Court has found that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg,* 193 W. Va. 388, 456 S.E.2d 469 (1995). In *Sugg,* this Court held that the prosecutor's comments should be examined using four factors:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at Syl. Pt. 6, in part. Although we have frequently analyzed prosecutorial comments pursuant to the *Sugg* standard, petitioner fails to analyze or discuss this test with regard to the prosecutor's comments, instead simply setting forth that standard when addressing alleged ineffective assistance of trial counsel. Here, the prosecutor's comments did not have a tendency to mislead the jury or prejudice the accused; they were not extensive; there was sufficient competent proof aside from the prosecutor's isolated remarks; and petitioner has failed to show that the comments were deliberately placed before the jury to divert attention to extraneous matters. Thus, petitioner has failed to satisfy the *Strickland/Miller* standard in order to establish that appellate counsel was ineffective by failing to raise this issue on direct appeal.

With regard to the circuit court's allegedly improper comments, due to petitioner's failure to quote from the transcript or cite to the record in support of this contention, we decline to address this portion of his argument.[6] Similarly, regarding his final allegation of ineffective assistance of appellate counsel, the failure to file a petition for rehearing, petitioner fails to cite to the record to show that he addressed this issue with the circuit court, continuing to violate Rule 10(c)(7) of the

---

[6] Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

West Virginia Rules of Appellate Procedure.[7]

Petitioner next argues that the circuit court denied him his Sixth Amendment right to confront witnesses by prohibiting counsel from questioning B.W. and C.W. about their pending abuse and neglect case. He asserts that two of the State's key witnesses were subjects of an abuse and neglect proceeding, and the prosecutor on petitioner's case was counsel for the Department of Health and Human Resources ("DHHR") at the same time she was prosecuting petitioner's case. However, the trial court prohibited defense counsel from cross-examining B.W. and C.W. about the abuse and neglect proceeding because it concluded that such proceedings were confidential; petitioner contends that in reaching that conclusion, the trial court "failed to recognize the influence the prosecutor actually held in the abuse and neglect proceedings."[8]

By statute, with few exceptions, "all records and information concerning a child or juvenile which are maintained by the Division of Juvenile Services, the [DHHR], a child agency or facility, court or law-enforcement agency are confidential and shall not be released or disclosed to anyone, including any federal or state agency." W. Va. Code § 49-5-101(a). Petitioner's request to impeach the credibility of the State's witnesses on their open abuse and neglect case does not fit into any of the enumerated exceptions to that rule. *See* W. Va. Code § 49-5-101(b), (c). In addition, as this

---

[7] In support of his contention that he was entitled to a rehearing due to the disproportionality of his sentence, petitioner cites to *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017), which we find unpersuasive as to petitioner's argument. In that case, we found as follows:

> We hold that the felony offense of driving while license revoked for DUI under West Virginia Code § 17B-4-3(c) is not an offense that involves actual or threatened violence to the person for purposes of invoking the recidivist statute, West Virginia Code § 61-11-18(c). The recidivist life sentence imposed on Mr. Kilmer based upon the predicate felony conviction for unlawful assault, together with two prior non-violent felony convictions, violates the proportionality principle in Article III, Section 5, of the West Virginia Constitution.

Because petitioner's case does not involve the same crime and petitioner's scant analysis does not establish why his sentence should have been revoked on this basis, he has failed to satisfy the *Strickland/Miller* test.

[8] Petitioner further argues that his Sixth Amendment right to confront was again violated when he was not permitted to cross-examine West Virginia State Police Captain Widmeyer, who reportedly became involved with the photographs at the request of Mr. Omps, and Bob Carson, the photo lab technician, of the State Police. However, due to his failure to cite to the record to support his contention that he was not permitted to cross-examine these witnesses, the Court declines to address this portion of petitioner's argument. *See* West Virginia Rule of Appellate Procedure 10(c)(7). Further, as we previously have stated, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res., Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Court has held, "[t]his state recognizes a compelling public policy of protecting the confidentiality of juvenile information in all court proceedings." Syl. Pt. 7, *State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W. Va. 611, 520 S.E.2d 186 (1999). Respondent asserts that in the end, petitioner had the opportunity to cross-examine the witnesses; the examination was just limited in scope. We agree, as it is uncontested that petitioner was able to question B.W. and C.W. about issues relevant to the crime and the charges against petitioner. We find that the circuit court did not err in limiting the scope of the cross-examination of B.W. and C.W. to prohibit irrelevant questions regarding the pending abuse and neglect case.

Finally, petitioner argues that the trial judge's comments insinuating petitioner's identity in pictures in front of the jury violated petitioner's right to a fair trial. Petitioner asserts that the court seemed to cross-examine Ms. Hartley for the State by stating, "The question was that you wanted to blame that on somebody else, right, so answer it." Petitioner contends that that improper interjection "clearly intimated to the jury that the trial court believed Ms. Hartley was being evasive and unresponsive." When B.W. was under oath, petitioner's defense counsel asked if she recalled speaking to his investigator, which she denied, so defense counsel offered to provide a transcript of the recorded conversation to refresh her recollection. The court interjected, "Maybe it wasn't her." Petitioner asserts that that comment suggested to the jury that B.W., a prosecution witness, was credible while defense counsel was mistaken, undermining petitioner's claims.

During Ms. Hartley's examination, petitioner inquired about characteristics of the faces in photos, similar to the questions posed to Lt. Stapleton. In response to an objection from the prosecutor, the court stated,

> Well, what I said was he talked about characteristics, not whether or not it was the defendant. You kind of just asked whether or not it looked like [petitioner]. The officer didn't testify it looked like [petitioner]. He testified to the facial hair, the crease, those matters, but he never came out and said I think it's [petitioner]. In my opinion that is the defendant. You're now asking her that. So the objection was to that and that's what I had sustained but you already got your question.

Then, after an exchange between the attorneys and the court, the court continued, "I guess, ladies and gentlemen, the ultimate conclusion is yours to decide, not the witness to decide as to whether or not that's the same individual who is charged here as [petitioner] in those photographs or not. That's up for you to do." Petitioner contends that the court unnecessarily extrapolated the State's objection and extended its explanation in the presence of the jury and improperly implied to the jury that Ms. Hartley's testimony was less reliable than that of the investigating officer.

With regard to the first identified comment by the court, the witness was asked whether she was at her daughter's house and went into her bedroom and discovered pills but "wanted to blame that on someone else, too." The witness responded, "Marquez." The court then clarified, "The question was that you wanted to blame that on someone else, right, so answer it." Respondent asserts that the court was clearly not commenting on or opining about the witness's credibility and was, instead, merely directing her to answer the question. Regarding the second instance, respondent asserts that petitioner mischaracterizes the interaction as the court disrupting defense counsel by commenting, "Maybe it wasn't her." When B.W. was being questioned, she denied

speaking to defense counsel's investigator and counsel offered to let her see the transcript of the call to refresh her recollection. The court then interjected, "Ask her who she was speaking with. She may not know this person was an investigator from your office." As the exchange continued, B.W. denied speaking to anyone, but the court allowed defense counsel to present the transcript to her. The prosecutor then said, "But if she doesn't [recall after looking at the transcript] then I think we're done at that point." The court then responded, "Maybe it wasn't her." Respondent contends that this comment in no way reflects the trial court's opinion on the credibility of either the witness or defense counsel, as petitioner suggests. He further asserts that it is "merely the off-handed comment of a judge trying to keep his trial on track."

The final instance identified by petitioner involved petitioner's defense counsel asking Ms. Hartley about facial features shown in the enlarged photo, to which the prosecutor objected, asserting that counsel was leading the witness. When counsel asked what the difference was in the face, the court responded as set forth above. Petitioner's defense counsel then apologized, and the following exchange occurred:

> Court: They can rebut. If they want to put the officer back on and see if that's his opinion also, but just go to characteristics, not as to the defendant.
> Petitioner's counsel: So don't compare the two.
> Court: No, you can compare – do you think that chin line is the same chin line; do you think that nose [is] the same nose. Just no –
> Prosecutor: The ultimate conclusion.
> Court: Yes, the ultimate conclusion if that's the defendant.
> ***
> Court: I guess, ladies and gentlemen, the ultimate question is yours to decide, not the witness to decide as to whether or not that's the same individual who is charged here as the defendant is in those photographs or not. That's up for you to do.

Respondent asserts that that exchange does not "expose the trial court's opinion as to the credibility of this witness compared to other witnesses; nor did the court improperly 'extrapolate' the State's objection." We agree with respondent's arguments as to this assignment of error. None of the circuit court's clarifications or comments rise to the level of expressing an opinion as to petitioner's guilt or the evidence. We further find that these comments did not violate petitioner's rights. For these reasons, we affirm the circuit court's denial of petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** April 20, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

14